# CHRISTENSEN *v.* NOYES.

PATENTS; INTERFERENCE; CONSTRUCTIVE REDUCTION TO PRACTICE; FORFEITED APPLICATIONS.

Noyes filed his application May 13, 1895, in the Patent Office, for a patent for an improvement in triple valves of an automatic air-brake, and the same was allowed November 26, 1895. His application became forfeited because of failure to pay the final fee, and he did not file a renewed application until June 28, 1897. On April 30, 1896, Christensen filed his application for a patent for the same invention, and a patent was granted him April 20, 1897. Upon an interference being declared between the parties, it was shown that Christensen was the first inventor, and the question was as to the effect of Christensen's patent as against Noyes' prior application, renewed after the granting of the patent to Christensen. *Held*, reversing a decision of the Commissioner of Patents in favor of Noyes, that while, under proper circumstances, the filing of a renewed application within two years after the allowance of a forfeited original application, as provided for in Sec. 4897, R. S. U. S., wil entitle the applicant to his original application as a construc tive reduction to practice, such a constructive reduction to practice could not be successfully set up by Noyes to defeat the patent of Christensen, the first inventor, and, therefore, the issue of priority must be found in favor of Christensen.

Patent Appeals. No. 119. Submitted March 15, 1899. Decided June 6, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed.*

The facts are sufficiently stated in the opinion.

*Messrs. Winkler, Flanders, Smith, Bottum & Vilas, Mr. Esek Cowen* and *Mr. Wm. G. Henderson* for the appellant: ℚ

1. This is a second application by Noyes filed under section 4897, R. S., after the patent first allowed had been withheld, for non-payment of the final fee within six months from the time of allowance. This is a new application to

be treated by the office as original, and Noyes can gain no advantage by reason of his first application which never resulted in a patent. Sec. 4897 is not an enabling but a restrictive statute, limiting the time to make a new application to a period of two years after the allowance of the first application.

2. Christensen's patent was actually granted April 20, 1897. From that time he was entitled to all the rights of a patentee and his patent could be only defeated by proof of one or more of the defenses enumerated in section 4920, R. S. The defense that a subsequent inventor has made an application for a patent earlier than that of the patentee is not mentioned in that section. In this case priority should be awarded to Noyes, unless the facts disclosed are such that if an action for infringement were brought by Christensen on his patent, against the Westinghouse Company, or against any other party, the defendant could defeat the action on the ground of non-invention, by alleging and proving the same facts and circumstances. *Wurtz* v. *Harrington*, 10 App. D. C. 149.

The filing of an application does not constitute prior invention, as against a subsequently granted patent. To avoid an existing patent there must be an actual prior reduction to practice. Drawings will not do, verbal descriptions will not do, a description in writing merely is not enough, to be the equivalent of a reduction to practice. The description must be in a patent, or in a printed publication, and neither a rejected, abandoned or forfeited application is a patent or a printed publication. *Ellithorpe* v. *Robertson*, 4 Blatchf. C. C. 307 ; *Draper* v. *Potomska Mills Co.*, 13 O. G. 276 ; *Ventilating Co.* v. *Lalor*, 12 Blatchf. 303.

The Patent Office is at liberty to hold, that as between two applicants for a patent, the filing of an application is a reduction to practice, it may hold that, as against a mere applicant, an application, followed by a patent, is a reduction to practice; but when a patent has been granted, the

rights of the patentee are beyond the jurisdiction of the Patent Office. They are under the protection of the courts of justice, and they do not hold that anything, short of a complete operative machine, is sufficient to establish prior invention, as against a subsequent patent.

While, in accordance with the settled practice of the Office, Christensen's filing date being later than the filing of Noyes' forfeited application, Christensen is made the junior party, he is such junior party only for the technical convenience of office practice, and the burden of proof is not on that account necessarily upon him. *Thompson* v. *Waterhouse,* 38 O. G. 177; *Ducheman* v. *Priester,* 48 O. G. 1416; *Phelps* v. *Hardy,* 77 O. G. 631; *Mumford* v. *Carpenter,* 60 O. G. 437; *Farmer* v. *Brush,* 17 O. G. 150; *Scudder* v. *Mergenthaler,* 76 O. G. 1851.

Christensen is the patentee. The patent was issued to him regularly, and as the patentee this Office has repeatedly held that the presumption was in his favor. *Hunter* v. *Jenkin,* C. D. 91, 157; *Hansen* v. *Davis,* 55 O. G. 998; *Hunter* v. *Van Depoele,* C. D. 91, p. 238; *Deprez* v. *Bernstein,* 54 O. G. 1711; *Stover* v. *Clark,* C. D. 1877; *Christie* v. *Seybold,* 54 O. G. 95; *Doyle* v. *MacRoberts,* 8 App. D. C. 445; *Hein* v. *Pungs* 68 O. G. 657; *Carty* v. *Kellogg,* 74 O. G. 657; *Sargent* v. *Burge,* C. D. 1877, p. 62.

It is, therefore, perfectly clear that the burden of proof is not upon Christensen, although he is the junior party to the interference; that being a patentee, the burden of proof is heavily upon Noyes to show the reasons for his delay; that as his application was forfeited or abandoned, it does not constitute a constructive reduction to practice; that Christensen was undeniably the first inventor and that he proceeded with all possible diligence to reduce his invention to practice and to file and prosecute his application for a patent therefor. The patent he has obtained must, therefore, be adjudicated to be valid and the decision of this interference should be in his favor upon this ground.

3. Assuming that filing the application by Noyes was a constructive reduction to practice, as against a subsequent patentee, the proofs in this case conclusively show that Christensen was the first to conceive the invention, and that he used due diligence in perfecting his invention, and adapting it to use, and in applying for a patent. The rule of the courts and especially of this court, has been to give the inventor a reasonable time to make a successful working device. This is the plain meaning of the Act of Congress, which requires diligence in adapting and perfecting the invention ; which implies, not mere description or mere drawings, but actual experiment. No matter how complete the conception may be in the mind of the inventor, he cannot know that the invention is a practical success without an actual trial, and the law permits him by due diligence to acquire that knowledge. *Signal Co.* v. *Signal Co.*, 6 Fed. R., 603 ; *Huebel* v. *Tucker*, 24 Blatchf. 59 ; *Harvester Co.* v. *Harvester Co.*, 42 Fed. R. 152.

An inventor is not required to devote all his energies to the development of his invention. All that is required is reasonable diligence. *Webster* v. *Loom Co.*, 5 O. G. 522 ; *Cox* v. *Griggs*, 1 Biss. 362 ; *Sayles* v. *Railroad Co.*, 1 Biss. 468 ; *Yates* v. *Huson*, 8 App. D. C. 93.

*Mr. J. Snowden Bell* and *Mr. George H. Christy* for the appellee:

1. That an application which has been renewed under Sec. 4897 R. S., and Rules 174 and 175 of the Patent Office, is to be treated as a continuation of the application previously allowed and forfeited by reason of failure to pay the final fee, is so well settled, both in the Patent Office and the courts, as to be *res judicata.* *Thompson* v. *Waterhouse*, 30 O. G. 177; *Ligowski Co.* v. *American Co.*, 34 Fed. R. 328 ; *International Co.* v. *Richmond*, 30 Fed. R. 775. See, also, *Godfrey* v. *Eames*, 1 Wall. 317; *Smith* v. *Vulcanite Co.*, 93

U. S. 483; *Graham* v. *McCormick,* 11 Fed. R. 859; *Weston* v. *White,* 13 Blatchf. 447.

In the recent case of *Park* v. *Cain,* 83 O. G. 1345, the present Commissioner of Patents not only followed the rulings of the cases cited, but held, further, that where an interferant had filed an allowable application, disclosing the invention in issue, which he had the right to renew, but did not renew, his later application in interference was, "for the purpose of showing a constructive reduction to practice, a continuation of the first application," and awarded him priority upon the date of the constructive reduction to practice of the first application. See, also, *Park* v. *Davis,* 84 O. G. 146.

2. The assignee of Noyes was under no obligation to inform Christensen as to the Noyes application, or to renew said application any earlier than the limit of the time allowed for that purpose by section 4897 of the Revised Statutes. So long as it acted within its rights, as prescribed by law, no abandonment can be presumed, and obviously none has been proven. It was entitled to avail itself of whatever time was allowed by the law, and deemed necessary or advisable by its counsel, for the renewal of the Noyes application, and was under no obligation to expedite such renewal in order to promote the interest or the convenience of other parties. *United States* v. *Telephone Co.,* 79 O. G. 1362.

3. When Christensen's application was filed April 30, 1886, Noyes' application, previously filed and allowed, was then still alive, and unforfeited, and did not become forfeited until May 26, 1896. Christensen's act in subsequently procuring the issue of a patent to himself, did not, and under the law or in equity, could not of itself work any abatement of or at all impair any right which Noyes under the law may have been entitled to claim, hold or prosecute in respect of the invention he had made and for which he had filed his patent application.

4. Section 4897 is cognate in character to what we know as "statutes of limitation," statutes relating to "equity of redemption," etc., and in respect of time named, and in respect of what may be done within that time, is to be similarly construed. And as regards the construction of such acts, at least two rules are well settled. (1) It is to be construed favorably as respects the particular persons for whose benefit it was enacted. Hence, in the case now before us, it is to be construed, so far as it is open to construction, for the benefit of Noyes, rather than for the benefit of Christensen. (2) The other rule of construction is still more to the point, viz., where a statute of relief—which this is—provides that the party to be relieved may avail himself of the benefit of the statute "within two years," he has an incontestable right to avail himself of the privilege so granted, at any time during the two years.

5. A first conceiver must use reasonable diligence in reducing his idea to practice, in order to entitle him to a patent as against a subsequent conceiver who has first produced the concrete art or instrument. 1 Rob. on Patents, Sec. 390 ; *Farmer* v. *Brush,* 17 O. G. 150; *Platt* v. *Shipley,* 11 App. D. C. 576 ; *Dodge* v. *Fowler,* 11 App. D. C. 592; *Croskey* v. *Atterbury,* 9 App. D. C. 207; *McCormick* v. *Cleal,* 83 O. G. 1514; *Mason* v. *Hepburn,* 84 O. G. 147.

6. The filing of an allowable application, as was done by Noyes on May 13, 1895, constitutes a reduction to practice. *Porter* v. *Louden,* 7 App. D. C. 64.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is from the Patent Office, and the subject of it is an interference declared between an application for a patent by Henry F. Noyes, the appellee, and a patent issued to the appellant, Neils A. Christensen, for an improvement in triple valves of an automatic air-brake. The improvement relates to what is known as an "emergency" device,

to be used where, instead of the gradual stop of the railroad train, as in the ordinary operation of the road, it is desirable to make a sudden and immediate application of the brakes to all the cars of the train simultaneously, or as nearly so as possible, to avert an impending accident.

The improved state of the art of construction of automatic air-brakes, in connection with which the present invention is intended to operate as a further and additional improvement, is described in two patents, Nos. 360,070 and 376,837, respectively, issued to George Westinghouse, Jr. The mechanical construction of the devices described in and covered by those two patents is familiar to all inventors of railroad appliances and to all railroad operatives, and therefor it is unnecessary to describe them here. They are in general use everywhere, on lines of railroad of any considerable extent in this country, to say nothing of railroads of other countries.

The subject of the present interference is a device employing two pistons or movable valves, both contained in the same casing, and acting in conjunction when an emergency stop is to be made. The emergency piston is a cylindrical valve, which, when moved by reservoir-pressure, opens passages, through which the air, both from the reservoir and train-pipe, passes into the brake-cylinder. The service or main valve is inclosed in the emergency-valve, and by a slight reduction of pressure moves so as to open passages, through which the air from the reservoir alone passes into the brake-cylinder.

There is really no conflict of evidence in regard to any material fact of the case, and the only question is, who is entitled to priority on the facts as they are virtually conceded by the parties to the issue.

The parties to the interference, Noyes, represented by his assignee, The Westinghouse Air Brake Company, and Christensen, appear to be independent inventors, but there is no real question of the fact that Christensen was the first

inventor; and the question is, therefore, not who was the first to conceive or invent the device of the issue, but what is the effect of a patent granted to the *first inventor* as against a prior applicant, whose application after allowance in the Patent Office became forfeited for non-payment of the final fee, but subsequently renewed *after the patent issued to the first original inventor.* It is a settled principle in the patent law that the date of an invention is the date of the discovery, or clear and definite conception of the idea involved, and the attempt to embody it in some external form or shape, and not the date of the perfecting of the instrument by experimental tests. *Colt* v. *Mass. Arms Co.,* 1 Fisher Pat. Cas. 108 ; *National Oil Co.* v. *Arctic Oil Co.,* 8 Blatchf. 416.

The appellee, Noyes, filed his application in the Patent Office on May 13, 1895, and the same was allowed November 26, 1895. On April 30, 1896, Christensen filed his application, upon which a patent was issued on April 20, 1897. Though the application of Noyes was allowed before the application of Christensen was filed, the former allowed his application to lapse or become forfeited, because of the non-payment of the final fee, as required by the statute, and did not file a renewed application until June 28, 1897, after the patent had issued to Christensen on the latter's application.

With the renewed application of Noyes was filed the following petition of his assignee, The Westinghouse Air Brake Company :

*"To the Commissioner of Patents :*

Your petitioner, The Westinghouse Air Brake Company, a corporation organized under the laws of the State of Pennsylvania, and having its principal office at Pittsburg, in that State, represents that on May 13, 1895, Henry F. Noyes filed an application for letters patent for an improvement in triple valves for air-brakes, Serial No. 549,167, which application was allowed November 26, 1895, but he failed to make payment of the final fee within the time allowed

by law. The undersigned, The Westinghouse Air Brake Company, assignee of the entire interest in the above-mentioned application for letters patent, now makes renewed application for letters patent for said invention, and prays that the original specification, oath, and drawings may be used as a part of this application."

This application was duly signed by the company.

Upon the filing of the application for renewal, the interference with the previously-issued patent to Christensen was declared by the Office July 21, 1897, in three counts, as follows :

" 1. In a triple-valve device, the combination of a casing, an emergency-valve operating therein and adapted to admit pressure from a train-pipe directly to a brake-cylinder, an emergency-piston, dependent upon the presence of, and directly connected with, a main piston, and adapted to operate such emergency-valve unassisted in any way by travel of the main piston, substantially as described.

" 2. In a triple-valve device, the combination of a casing, divided by movable partitions into three chambers, one of such chambers exposed to auxiliary-reservoir pressure and the other two chambers exposed to train-pipe pressure, one of said partitions composed of a cylindrical piston having a main piston working within it, said cylindrical piston being firmly connected with the other partition, and being operated by the difference of pressure due to the difference of the area between it and said partition connected with it, said main piston operating for service applications, and said cylindrical piston for emergency applications, substantially as described.

" 3. In a triple-valve device, the combination of a casing, a main piston and an emergency-piston, working within such casing, one of said pistons adapted to form a cylindrical shell within which the other works; the emergency-piston adapted to operate an emergency-valve to effect the direct admission of pressure from a train-pipe to a brake-cylinder,

the main piston adapted to operate a main valve to admit pressure from an auxiliary reservoir to a brake-cylinder, the travel of said main piston in the direction necessary to apply the brakes adapted to have no effect upon the operation of said emergency-piston, substantially as described."

Of these issues, count 1 is stated by the Office to be claim 1, and to cover claims 2, 3, 4 and 5 of the application of Noyes, filed May 13, 1895, and claim 2 of the patent of Christensen, issued April 20, 1897; that count 2 is stated to be claim 6, and to cover claim 7 of the Noyes application, and claim 2 of the patent issued to Christensen; and that count 3 is stated to be claim 10, and to cover claim 11 of the Noyes application, and claim 2 of the Christensen patent.

In the preliminary statement of Christensen he alleges "that he conceived the invention contained in the claims of his patent declared to be involved in this interference, including claim No. 2, on or about May 17, 1894; that at or about that time, and repeatedly afterwards, he made sketches and drawings illustrating the subject-matter of his invention; that he described his invention to others between July 13, and August 3, 1895, and at various times thereafter. That he made, or caused to be made, a working drawing of his said invention embodied in claim 2 of his patent, which drawing was completed December 8, 1895; that afterwards he made, or caused to be made, other working drawings which were completed on or about February 15, 1896; that from the latter drawings patterns were made and completed February 26, 1896; that from said patterns castings were made and completed on about March 2, 1896; that a full-sized operative valve, embodying said invention as described in his claim No. 2, was set up and successfully tested under full air-pressure in the shop of the Seamless Structural Co., at Milwaukee, Wis., on or about March 15, 1896; and that a number of other triple valves embodying the subject-matter of said claim 2 have been made and tested by him or under his direction."

Noyes, in his preliminary statement, says that he originally conceived the invention set forth in the declaration of interference on or about April 15, 1895; that a drawing of the invention was made on or about April 20, 1895, and another and full-size scale drawing on or about May 2, 1895; but that no model had been made; that the invention was first disclosed to others on or about April 22, 1895; *that no reduction to practice was made other than the constructive reduction to practice by the filing of his application* for letters patent on May 13, 1895.

That the full and complete embodiment of the invention is described in the patent to Christensen, and in the application of Noyes, respectively, and formulated in the issues of interference, is conceded by both parties; and while testimony was taken on the part of both of the parties to the interference, there is really no considerable conflict or controversy in regard to the facts of the case. The examiner of interferences concluded, however, that Noyes had priority of right, though the last to conceive the invention in issue, because he was the first to come to the Office with a completed application. He also concluded that Christensen, though the first to conceive the invention, was without sufficient excuse for his delay in prosecuting and perfecting the invention in issue, and that such delay was fatal to his claim to priority, notwithstanding his earlier conception and of the fact that he held the patent for the invention. The examiner of interferences, so concluding, decided against Christensen, and in favor of Noyes or his assignee, The Westinghouse Air Brake Company.

On appeal, the board of examiners-in-chief concluded that Christensen's poverty and lack of means was no excuse for his lack of diligence in adapting and perfecting his invention, and they therefore affirmed the decision of the examiner of interferences, and awarded priority to Noyes. And on appeal to the Commissioner of Patents, that decision was affirmed, the Commissioner holding that, although

Christensen was the first to conceive, he was not diligent in reducing his invention to practice, and that therefore Noyes, later to conceive, but earlier to reduce to *constructive practice* was entitled to an award of priority. No effect whatever was allowed, by any of the tribunals in the Patent Office, to the fact that Christensen, in addition to being the first to conceive the invention, had obtained a patent therefor, and that, too, after Noyes had allowed his application to become forfeited, and before that application was renewed. All concede that Christensen was the first to conceive; but they all hold that he lost his right by delay, and that Noyes had acquired a superior and paramount claim to priority, *by mere constructive reduction to practice*, in getting into the Office before Christensen, though he afterwards suffered his application to lapse and become forfeited, for non-compliance with the requirement of the law. Whether this claim on the part of Noyes and his assignee is maintainable, is, in our view, the controlling question in this case.

As it appears, diligence or want of diligence on the part of Christensen was the sole question upon which the case was made to turn in the Patent Office. But, in view of all the facts and circumstances of the case, it is far from being clear, as it seems to have been supposed, that there was want of reasonable diligence on the part of Christensen, in perfecting his invention and applying for a patent therefor, or of his not having actually reduced his invention to practice. The proof makes it clear that not long after his conception of the device he disclosed it to others in the latter part of the year 1894; that he had tried to obtain money to enable him to make application for a patent, in December, 1894; and that he had disclosed the invention to and sought to interest Watkins in the invention in the spring of 1895 ; that in June, 1895, he had attempted to induce Watkins to file an application for the triple-valve invention ; and that in September, 1895, an oral agreement was made in regard to the matter; that in December, 1895, working drawings were

made, and that, from that time on, and from time to time, during the residue of the period that intervened between that time and the time of filing his application, he applied himself to work on this automatic triple-valve device. Patterns were finished in February, 1896, and the valves were tested March 15, 1896; and, as we have already stated, the application was filed April 30, 1896. It is really difficult to conceive that greater perseverance and diligence could be, in reason, required, and especially of one who, for a greater part of the time, was in a state of almost abject poverty, and who was under a necessity of pursuing a constant employment to procure the means of subsistence for himself and family. It must, moreover, be borne in mind, that the mechanism of the invention itself was of a most complex, difficult, and delicate character, and such as required not only the application of a high order of inventive genius, but in order to obtain assurance of success, to make numerous and varied experiments, which would require considerable time. And in such case, it is a settled principle, in practice as well as in reason, that forbearance to apply for a patent during the progress of experiments, and until the party has perfected his invention and tested its value by practical experiment, affords no ground for presumption of abandonment, (*Agawam Co.* v. *Jordan*, 7 Wall. 583, 607), nor should such delay operate in any way to the prejudice of the inventor, or to his right to obtain a patent for his invention; certainly not as against a subsequent or junior inventor.

On the part of Christensen it is contended, that the experimental test of the valves on the 15th of March, 1896, only a month and a half before the filing of his application, was substantially and for all practical purposes successful, and therefore an actual reduction of the invention to practice. It is true, the examiner of interferences thought it was not a successful actual reduction to practice, and the other two tribunals in the Patent Office passed no definite judgment upon the question. But the examiners in chief, in

their opinion, say that Christensen was not required to delay his application until he succeeded in making an actual reduction to practice, but that he could have availed himself of a constructive reduction to practice by filing his applcation at some prior date to the time that he did file it. They then go on to say:

" In order to take this latter course he must have had in his mind a clearly-conceived idea of all the mechanical contrivances to be used in the construction of the valve.   That he was thus mentally equipped there can be no question.   It is admitted and agreed by both parties to the controversy, that Christensen's drawings and sketches were sufficient to afford to any mechanic familiar with the air-brake art all the information necessary to enable him to construct a valve. It is entirely clear that had Christensen had the means he could have at least as early as the latter part of 1894 filed an application for a patent."

It is urged on the part of Noyes, and his assignee, that the test of the alleged completed valve on March 15, 1896, was not successful, and that, consequently, Christensen can properly be allowed only the dates of conception, May 17, 1894, and constructive reduction to practice by filing of his application, April 30, 1896.

But, in the view we have of this case, we do not deem it at all necessary to examine and determine the question as to whether the test made of the triple valve, March 15, 1896, was in all respects a perfect success or not, such as to make it a complete actual reduction to practice of the invention. It may, or it may not, have been of such character.   It is conceded that a constructivé reduction to practice was quite sufficient to entitle Christensen to a patent for his invention, provided his right was not subordinated to and overcome by the prior constructive reduction to practice of the independent invention of Noyes, by the prior filing of the latter's application on May 13, 1895.   It is contended for Noyes and his assignee, that such was the effect of the

application of Noyes, though he was the last to conceive the invention.

In this aspect of the case, however, the question arises, what was or is the effect of the forfeiture of the allowed application of Noyes, as affecting the patent issued to Christensen, the first conceiver of the invention, after the forfeiture, and before the application for renewal, filed June 28, 1897 ? By section 4885 of the Revised Statutes, if the final fee is not paid within six months after the allowance of the application, the patent is required to be withheld; and, by section 4897 of Revised Statutes, any person to whom a patent is ordered to issue upon the payment of the final fee, "but who fails to make payment thereof within six months from the time at which it was passed and allowed, and notice thereof was sent to the applicant or his agent, shall have a right to make an application for a patent for such invention or discovery the same as in the case of an original application ; but such second application must be made within two years after the allowance of the original application. But no person shall be held responsible in damages for the manufacture or use of any article or thing for which a patent was ordered to issue under such renewed application prior to the issue of the patent."

As we have seen, the application of Noyes was allowed November 26, 1895, and the six months within which the final fee was required to be paid expired May 26, 1896. The Westinghouse Air Brake Company purchased the invention and application of Noyes, September 8, 1896, a little more than nine months after the application had been allowed. It was in the interval, between the allowance of Noyes' application and the time of the expiration of the six months from the payment of the final fee, that the application of Christensen was filed, and the patent issued to him before the renewed application of Noyes and his assignee was filed.

It is argued on behalf of Noyes and his assignee, that the

renewed application of June 28, 1897, had the effect in all respects of restoring the forfeited application to the same position and with like effect as if the final fee had been duly paid on the allowance of the original application; and that the renewed application relates back to and takes the place of the original application, with its allowance, as if no lapse or forfeiture had occurred. While, on the other hand, it is strongly urged on behalf of Christensen, that the renewed application, after the forfeiture of the original application filed by Noyes, should have been treated by the Patent Office as an original application, and that neither Noyes, nor his assignee, can gain any advantage by reason of the first or forfeited application, which never resulted in a patent. This latter proposition, however, would seem to be concluded by decisions that we are not disposed to disturb. Whatever may have been the former doubt in regard to the true construction of section 4897 of the Revised Statutes, that question was resolved by the Commissioner of Patents, adverse to the present contention of the appellant, Christensen, in the case of *Thompson* v. *Waterhouse,* found reported in 30 O. G. 177; and that construction has been adopted and followed by this court, in the case of *Cain* v. *Park,* 14 App. D. C. 42. The rule of construction thus declared has obtained in the Patent Office for a good many years, and it would be very unwise now to disturb it, even if we thought that a different construction would better comport with the terms of the statute. By these cases it has been held, that in the case of a forfeited application, and the filing of a second or renewed application within two years, the inventor may, under proper circumstances, become entitled to the original or forfeited application as a constructive reduction to practice. This general principle, based on the construction of section 4897, Revised Statutes, we do not propose to reverse; but the principle is not of universal application. It is an uncontroverted fact, that Noyes never in any manner reduced his invention to actual practice, nor tested it in any

way, before applying for a patent. His application, therefore rested upon mere description in his specification and claims; and this of necessity left the success of the invention to subsequent experiment, and that of a doubtful character, if the objection urged to the test made by Christensen be well founded.

In an action for infringement by Christensen could it be successfully shown in defense, by Noyes or his assignee, or by any other person, that Noyes was the first inventor because, *by simply filing his application,* he had made a constructive reduction to practice before Christensen had made an actual reduction to practice by constructing an operative machine? or could such a defense prevail to defeat a patent actually granted to the first inventor? If not, it would seem to be clear that a patent ought not to be issued to Noyes, or his assignee, upon any mere theory of priority of invention, when he in fact is not such. It is certainly not the policy of the patent system of the United States that more than one patent should issue for the same invention; nor ought litigation to be encouraged or made necessary by issuing patents to anyone except to those really entitled to them. The patent granted to Christensen was lawfully issued. He was the first inventor, and at the time of the issue of his patent there was no pending application in the Office, nor any unexpired patent, with which it would interfere. The bare possibility that there might be an application filed, to renew the forfeited application of Noyes, furnished no ground for a declaration of interference, nor did it furnish any ground for withholding a patent from the first inventor of the device for which patent was sought. An application that has been allowed to lapse or become forfeited, and before it is renewed, ceases to have vital and operative effect, except for a very limited and special purpose. According to the rule of the Patent Office, 174, "a forfeited application is one upon which a patent has been withheld for failure to pay the final fee within the prescribed time."

By rule 176 it is declared that "the second application will not be regarded for all purposes as a continuation of the original one, but must bear date from the time of renewal and be subject to examination like an original application." And so by rule 177, it is declared that "forfeited and abandoned applications will not be cited as references." And, by rule 178, it is provided, that "notice of the filing of subsequent applications will not be given to applicants while their cases remain forfeited."

On the plainest principles of justice and right, in cases of interference, priority of invention should only be awarded to the party who is really the first inventor, unless his right be forfeited by inexcusable delay and neglect, or by abandonment. And as between an application resting on a mere constructive reduction to practice, especially where that application is a renewal of a forfeited application, and a party who is really the first inventor, and to whom a patent has been issued for the invention, as in this case, the issue of priority must be found for the patentee. In such case, the mere constructive reduction to practice can not be set up to defeat an existing patent granted to the first inventor. A patent stands for something more than a mere written description of an invention; and as against a pending application for the same invention, resting upon no better foundation than a constructive reduction to practice, the patent must prevail. It has been held in many cases, that mere descriptions and drawings filed in the Patent Office, as part of an application, as against an existing patent issued to the first inventor, can not be accepted as an *actual reduction* to practice. Some of these cases are referred to and quoted from in the brief of counsel for appellee, and many others might be added.

In the case of *Ellithorpe* v. *Robertson*, 4 Blatchf. C. C. 307, the court said: "To constitute such a prior invention as will avoid a patent that has been granted, it must be made to appear that some one, before the patentee, not only

conceived the idea of doing what the patentee has done, but also reduced his idea to practice, and embodied it in some practical and useful form. The idea must have been carried into practical operation. The making of drawings of conceived ideas is not such an embodiment of such conceived ideas in a practical and useful form, *as will defeat a patent which has been granted.*"

In the case of *Draper* v. *Potomska Mills Co.*, reported in 13 O. G. 276, Judge Shapley said: "Illustrated drawings of conceived ideas do not constitute inventions, and, unless they are followed up by a seasonable observation of the requirements of the patent laws, they can have no effect upon a subsequently-granted patent to another. But a patentee whose patent is assailed upon the ground of the want of novelty may show, by sketches and drawings, the date of his inceptive invention, and if he has exercised reasonable diligence in perfecting and adapting it, and applying for his patent, its protection will be carried back to such date."

In the case of *Leman Ventilating Co.* v. *Lalor*, 12 Blatchf. C. C. 303, the court, Judge Blatchford, said, "that written description of a machine, although illustrated by drawings which have not been given to the public, does not constitute an invention within the meaning of the patent laws, so as to defeat a subsequent patent to an independent inventor, even though it be deposited in the Patent Office as a part of an application for a patent. To attain the character of a complete invention, it must be embodied in a form capable of useful operation."

And if such written description, illustrated by drawings, will not be allowed to defeat or affect a subsequent patent issued to an independent inventor, *a fortiori* will not such description and illustrative drawings be allowed to defeat or affect a patent granted to the first or prior inventor, after the forfeiture of an application first filed, but on a subsequent conception of the invention.

There is no doubt or question of the general proposition,

that the inventor who first perfects a machine, and makes it capable of useful operation, is entitled to the patent. *Agawam Co.* v. *Jordan, supra.* But in this case Noyes has never done anything more than conceive the invention, and make illustrative drawings that he filed with his application; and that no reduction to practice of any kind was made by him, other than the *constructive reduction to practice,* by filing his application for patent May 13, 1895, is fully conceded by him in his preliminary statement.

In a race of diligence between two independent inventors, as in this case, it may be assumed, "he who first reduces his invention to a *fixed, positive and practical form,* is clearly entitled to priority of right to a patent therefor." *Reed* v. *Cutter and others,* 1 Sto. Rep. 510.

Here Christensen has obtained his patent, and being the first to conceive the invention, we must presume that his patent was rightfully granted, as against a party who subsequently conceived, but who has never reduced the invention to *actual, positive, and practical form.* *Reed* v. *Cutter,* 1 Sto. Rep. 590.

If, in this case, the question of diligence were considered as involved, we should be strongly inclined to impute the want of due diligence to Noyes and his assignee, rather than to Christensen. As we have seen, Noyes' application was filed May 13, 1895, and was allowed November 26, 1895. He allowed the time to expire within which he was required to pay the final fee, and, as a consequence, his application became forfeited. He had notice of the pendency on the application of Christensen; and the assignee of Noyes, The Westinghouse Air Brake Company, became fully informed of the pendency of the application of Christensen in December, 1896, if not before, and did not file the renewed application until June 28, 1897, more than two months after the patent had issued to Christensen. Under such circumstances it would not seem that the want of diligence could be fairly urged by Noyes, or his assignee, as a ground of

objection to the patent that issued to Christensen.  We do not, however, decide this case upon any question of the want of diligence in either party, but upon the broad and more definite ground of priority of invention, secured by a valid patent issued therefor.

The proceedings of this court on this appeal will be certified to the Commissioner of Patents, with this decision, to be entered of record, as directed by law; and it is so ordered.

*Decision appealed from reversed.*

On June 19, 1899, *Mr. Bell* and *Mr. Christy*, on behalf of the appellee, filed a motion for a rehearing.

*Messrs. Winkler, Flanders, Smith, Bottum & Vilas* and *Mr. Cowen*, for the appellant, opposed the motion.

On October 4, 1899, the motion was denied, Mr. Chief Justice ALVEY delivering the opinion of the Court:

The application in this case for rehearing must be denied. The appellee has shown no substantial ground for the application, and none that was not fully presented and argued on the original hearing, and fully considered by the court. There is nothing shown, either in law or equity, that calls for a rehearing of the case.

It is incontestably true, that Christensen was the original and first inventor of the matter of claim involved in the issue of interference.  This is fully conceded by all the tribunals of the Patent Office, and not seriously controverted by the appellee, Noyes, or his assignee, the Westinghouse Company.  He was not only the first to conceive the invention, which he did in May, 1894, and made sketches thereof, but he made full disclosure to others, and from time to time made drawings, and he had, before the application of Noyes was filed, during the latter part of the year 1894, and the spring and summer of the year 1895, made repeated efforts to obtain money to enable him to apply for a patent, and

had tried to induce others to aid him in the matter; and he had, before the filing of his application, made full·and complete drawings of the invention, and subjected the invention to practical tests. The proof shows clearly and beyond doubt that working drawings for the automatic triple valve were made in December, 1895; that patterns were finished in February, 1896, and that the valves were tested March 15, 1896, and the application was filed April 30, 1896.

The alleged conception of the invention by· Noyes was not until about the 15th of April, 1895, which was disclosed to his friends shortly thereafter, and he made a drawing thereof about April 20, 1895, and he filed his application for a patent May 13, 1895. And he did nothing more by way of reducing the invention to practical operation, before the ap plication by Christensen was filed.

This application of Noyes was allowed in the Patent Office, November 26, 1895; but failing to pay the final fee, the application became suspended or forfeited by force of section 4897 of the Revised Statutes of the United States, and the rules of the Patent Office; and it was during the period of forfeiture of this application—that is to say, on the 20th of April, 1897—that the patent was issued to Christensen. The interference was not declared until after the filing of the renewed· application by the Westinghouse Company as the assignee of Noyes, something more than two months after the issuing of the patent to Christensen.

It is true, though subsequent in point of time in the con_ ception of the invention, Noyes was the first to come to the Patent Office for a patent; and it is supposed and contended that this constituted a constructive reduction to practice of the invention, and therefore gave Noyes some superior right over his rival inventor, Christensen. But this is not our understanding of the law. On an issue of priority of invention, constructive reduction to practice of the invention by simply filing an application for a patent and having it allowed, or by filing an allowable application

for a patent, does not in any manner change or enlarge the right of such applicant *as against a prior inventor of the same or similar invention,* and which is made the subject of an issue of interference, though such prior inventor may be subsequent in filing his application. It is true the first applicant in such case becomes the senior party in the declaration of interference, and his prior application imposes the burden of proof upon the junior party or subsequent applicant in trying the issue of priority. But in no other respect does the mere constructive reduction to practice by a subsequent inventor subordinate or affect a prior invention; and this rule in regard to the burden of proof does not apply as against a patentee whose patent has been *regularly and lawfully issued,* in due course of proceeding. A subsisting patent, lawfully and regularly issued, can not be invalidated or in any manner affected by any subsequent proceeding in the Patent Office, even to the extent of imposing the burden of proof upon its holder that it was lawfully issued. And it is the express provision of the statute that no person has a right to " obtain a patent for that which was in fact invented by another, who was using reasonable diligence *in adapting and perfecting the same,*" or, unless the latter has abandoned his invention. Sec. 4920, Rev. Stats. U. S. The question of the exercise of reasonable diligence in adapting and perfecting the invention, and also the question of abandonment, from long-settled practice, are proper to be considered and determined in deciding upon the principal question of priority of invention. The result of this case in the Patent Office appears to have turned exclusively upon the decision of the question as to the exercise of due diligence by Christensen in reducing his invention to practice and presenting his claim to the Patent Office; and hence it was declared by the Commissioner, as it had been declared by the subordinate tribunals, that " there was really but one question to be considered in the case, and that was whether Christensen. the first to conceive the invention and disclose

it to others, was using due diligence in reducing his invention to practice at the time when Noyes appeared in the field."

The tribunals of the Office held the evidence to be insufficient to establish reasonable diligence on the part of Christensen, and therefore the question of priority was decided against him. In this conclusion we do not agree with the tribunals of the Patent Office. We think the evidence of reasonable diligence on the part of Christensen, under the special circumstances of the case, was quite satisfactory. With most of the reasoning of the tribunals of the Patent Office we fully concur, though not with the conclusion reached by them, with respect to the question of the supposed insufficiency of the evidence to show the exercise of reasonable diligence by Christensen.

There is no serious contention made that there was any abandonment of the invention by Christensen. On the contrary, it is expressly found and asserted as a fact, in the decision of the examiners in chief, "that in December, 1895, working drawings were made by Christensen, and that from that time on there was continuous work on the automatic triple-valve device of the issue."

It is also stated in the opinion of the examiners in chief, and fully supported by the proof in the case, "that it is admitted and agreed by both parties to the controversy, that Christensen's drawings and sketches were sufficient to afford any mechanic familiar with this air-brake art all the information necessary to enable him to construct a valve;" and therefore, according to the argument made, he ought to have filed his application sooner than he did. He, however, continued the work of adapting and perfecting the invention, and did not come to the Office with a crude and untested invention. He did not file his application until after he had made the valve and tested its operation; and upon discovering defects in the practical operation of the invention, he at once remedied such defects, and made the

invention a complete operative machine.    Mere forbearance to apply for a patent during the progress of experiments and until the party has perfected his invention and tested its value, affords no ground for presuming abandonment.    7 Wall. 607.

It is settled by abundant authority, that, as between rival inventors, the date of the invention in issue is fixed at the time at which a complete and intelligible embodiment, by which those skilled in the art can understand it, is presented. But it would also appear to be settled, that the date of an invention may be prior to the time the invention is embodied in a form capable of being patented.    This principle is maintained by the cases of *Colt* v. *Massachusetts Arms Co.* 1 Fish. Pat. Cas. 108; *National Oil Co.* v. *Arctic Oil Co.* 4 Fish. Pat. Cas. 514, and same case 8 Blatchf. 416, and we do not understand that those cases have ever been questioned or overruled.    And in an application for a patent relating to machinery, the invention may be exhibited as well in a drawing as in a model, so as to lay the foundation of a claim to priority, if such drawing be sufficiently plain to enable those skilled in the art to understand it.    *Loom Co.* v. *Higgins*, 105 U. S. 580, 594.    In this case, it is not controverted, indeed conceded, that the drawings made and exhibited by Christensen were sufficiently plain and explicit to enable those skilled in the art of the triple-valve construction to understand them.    And this being the case, and Christensen being the first inventor, and not having abandoned his invention, or forfeited it by the want of reasonable diligence in adapting and perfecting it, upon what principle can it be claimed that the subsequent invention by Noyes should take priority of that by Christensen? We know of no principle of right or justice upon which it can be done.

It is urged, however, that because Noyes, the subsequent inventor, was the first to file an allowable application (allowable because there was then no interfering or conflicting claim to the invention before the Office), and which applica-

tion was passed and allowed, though suffered to become forfeited for non-payment of the final fee within the time prescribed by section 4897 of the Revised Statutes of the United States, a superior right to priority to that of Christensen was acquired, upon the renewed or second application filed within the time authorized by the statute; notwithstanding that Christensen was the first inventor, and that, within the time that the application of Noyes stood as forfeited, a patent had been issued to Christensen for the invention. To this contention of the appellee we cannot accede. The forfeited application conferred no right except that of renewal in the manner and within the time prescribed, and the renewed application conferred no right in addition to that of the first application. It certainly conferred no right as against a prior inventor, who happened to file his application subsequent to that of the second inventor. At most, the first applicant could only acquire an inchoate right as against a prior inventor, dependent upon it being made to appear that the first inventor had either abandoned his invention, or lost the right to it by the want of reasonable diligence in perfecting it and making application for a patent. Whether the first application was forfeited or not, or supposing it had been renewed before the patent was issued to the first inventor, or even if the patent had been issued on the first application, the first inventor, upon showing a compliance with the requirement of the statute, would be entitled to a patent for his invention; and he could not be deprived of his right of priority by any mere technical rule of procedure adopted in the Patent Office.

It seems to be supposed, and the contention of the appellee would appear to be founded upon the theory, that by the constructive reduction to practice, by the mere filing of the original application by Noyes, and the subsequent renewal of that application by his assignee, as authorized by section 4897 of the Revised Statutes of the United States, that some fixed and determinate right had been acquired as against the right to priority of the invention by Christensen. But

this position cannot be maintained. The principal and controlling question as between the parties is, that of priority of invention, and the right to priority in Christensen has not been overcome or defeated by any mere constructive reduction to practice by Noyes, or the renewal of his original forfeited application by his assignee. No rights have been acquired by either of those parties as against Christensen, the first inventor. While Congress has prescribed the mode by which the exclusive right of an inventor in his invention may be secured, yet there is no property right in such invention until a patent be issued therefor. In the case of *Gayler* v. *Wilder*, 10 How. 477, 493, the court said: " The inventor of a new and useful improvement certainly has no exclusive right to it until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued."

And in the recent case of *Marsh* v. *Nichols, Shepard & Co.*, 128 U. S. 605, 611, and 612, the court said (the *italics* being ours): " But the patent for an invention conveys nothing which the Government owns or its predecessors ever owned. The invention is the product of the inventor's brain, and if made known would be subject to the use of anyone, if that use was not secured to him. Such security is afforded by the Act of Congress *when his priority of invention is established before the Patent Office.* The patent is ·the evidence of his exclusive right to the use of the invention ; it therefore may be said to create a property interest in that invention. Until the patent is issued there is no property right in it, that is, no such right as the inventor can enforce. Until then there is no power over its use, which is one of the elements of a right of property in anything capable of ownership."

In this case, as we have before declared, the right of priority in Christensen is clearly established, and upon his application, duly presented, a patent securing his right in the invention, has been regularly and lawfully issued ; and

D. C.]                      Syllabus.

there has been nothing shown by Noyes or his assignee to overcome and defeat the operation of that patent, or to entitle them, or either of them, to an opposing or conflicting patent founded upon an alleged priority of the invention of the issue of this interference.

We have deemed it proper to say thus much, in addition to what was said by us in the opinion heretofore delivered by this court, in view of what is positively asserted in the petition for rehearing, and in order to show that in no aspect of the case is there any ground for the contention of the appellee, and therefore no ground whatever for the application for reargument.

If it be thought by the appellee that his contention is well founded, his remedy is by application to a court of equity, as provided by section 4915 of the Revised Statutes of the United States.

*Application for rehearing denied.*