# CHERRY v. WHALEN.

SPECIFIC PERFORMANCE; PAROL AGREEMENTS CONCERNING LAND; DECLARATIONS AS EVIDENCE.

1. A bill in equity by a married daughter against her father for the specific performance of a parol contract to convey or devise land, in consideration of her caring for her mother during the latter's lifetime, which sets forth the purchase of the property by the defendant for the occupation of the complainant, her admission into full and exclusive possession in accordance with the terms of the alleged contract, and the fulfilment by the complainant of her part of the agreement,—shows a sufficient part performance of the parol contract to take the case out of the operation of the statute of frauds, and a demurrer is properly overruled. (Following *Whitney* v. *Hay*, 15 App. D. C. 164, 181 U. S. 77, 45 L. ed. 758, 21 Sup. Rep. 537.)

2. The testimony in such a case reviewed and examined and held to support the bill.

3. Evidence of declarations made by a party to a suit is often unreliable and unsatisfactory, and is to be scrutinized with care; but in cases of parol contracts for the devise of land, the contract sought to be established is generally to be inferred from the situation, circumstances, and relations of the parties, supported by evidence of verbal statements. (Following *Whitney* v. *Hay*, 15 App. D. C. 164, 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537.)

No. 1499.  Submitted April 13, 1905.  Decided May 23, 1905.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia enforcing the specific performance of a parol contract relating to land.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree of the supreme court of the District enforcing specific performance of a parol contract relating to land.

The bill was filed on July 12, 1902, by Elizabeth Ann Whalen against John Cherry, Mary Frances Cherry, his wife, and James B. Archer, Jr., trustee. Complainant is the daughter of defendant John Cherry, and the wife of Mark T. Whalen.

The bill alleges, in substance: That until June 1, 1897, complainant and her husband lived in a house known as No. 511 M street, S. W., in the city of Washington. That in 1897, Mary Cherry, the wife of John Cherry and mother of complainant, was about seventy years of age, and was enfeebled by age and illness. That she suffered from vertigo, and had sustained several attacks of paralysis. That in May, 1897, defendant John Cherry was serving as a night watchman, his employment keeping him from home at night. That he then came to complainant's house and told her that he would be compelled to engage someone to nurse his said wife, and see to her care and comfort. That to induce complainant to undertake said care for the remainder of his wife's life, he proposed to purchase certain lands and premises, known as sublot 138 in square 546, the house upon which (No. 1322 Four-and-a-half street, S. W.) adjoined the house then owned and occupied by him, to wit, No. 1324 Four-and-a-half street, S. W. That he would take the title in his own name, but would enjoy only a life estate therein, and would convey the remainder thereof, either by will or otherwise, to complainant in fee simple, freed and discharged of encumbrances of every kind and character. That complainant agreed to said proposition, and the contract was then and there mutually agreed to, it being further agreed that complainant should

occupy said house during the life of said Cherry, paying a monthly rental of $11, and the water rental in connection therewith. That in pursuance of said agreement the said Cherry purchased the said premises, taking a deed therefor to himself. That in pursuance of said agreement complainant removed from the house on M street to said No. 1322 Four-and-a-half street, S. W., and entered upon possession with her family. That complainant then and there undertook and performed each and every part of the agreement on her part. That complainant, from said date until the death of her mother, on April 19, 1900, was constant in her attention to her, caring for her during the said period according to the true intent and meaning of her said agreement. That complainant's said mother required her care and attention during the hours of day and night, and that she rendered the same constantly. That in pursuance of said agreement, defendant Cherry, about the — day of September, 1897, executed a will devising said land and premises to complainant, as he had agreed to do, in fee simple, but complainant is advised that he afterwards destroyed said will. That in March, 1901, defendant Cherry married his codefendant, then Mary Frances Hilton, and notwithstanding the fulfilment by complainant of her obligations under said agreement with him, on, to wit, July 7, 1902, executed and delivered to James B. Archer, trustee, a deed conveying said land and premises to him in trust, for a nominal consideration of $1, to convey the same in fee simple to his said wife, Mary Frances Cherry. That on the same day, the said James B. Archer, Jr., conveyed the said land and premises in fee simple to said Mary Frances Cherry in pursuance of his said trust, and for a nominal consideration of $1. That both of said deeds were duly recorded. That by the execution and delivery of said deeds the defendant Cherry has disabled himself from performing his said agreement with complainant, and she will be injured in her rights and privileges in the future enjoyment of said land and premises through said conveyances, unless an injunction issue restraining the defendants from alienating or encumbering the same. That by the execution of the said deeds defendant Cherry has been guilty

of fraud, and complainant is entitled to a decree declaring said Mary Frances Cherry a trustee holding the legal title in trust during the life of said Cherry, with remainder in fee to complainant.

The prayers for relief are in accordance with the allegations of the bill.

The defendants joined in a demurrer to said bill, on three grounds: First. That it does not appear that the alleged contract was in writing, as required by the statute of frauds; second, that the bill shows no performance of the alleged contract authorizing relief in contravention of the statute of frauds; third, that the allegations of the bill show that the complainant has a plain, adequate, and complete remedy at law.

This demurrer having been overruled, defendant Cherry answered under oath, admitting the general facts alleged in the bill, but expressly denying the agreement set out therein, the performance of services as alleged, and the commission of the fraud charged. In respect of the paragraph of the bill charging the execution and destruction of the will made by him in performance of his alleged agreement, he answered as follows: "This defendant is advised that it is not material or necessary to answer whether in September, 1897, or at any other time, he devised the property described in this cause to the complainant, or whether he afterwards destroyed any such will, but he denies that he ever devised said property to the complainant in pursuance of any contract whatever."

The answers of the other defendants were formal.

Testimony having been taken, the court entered a decree declaring the conveyance void in so far as inconsistent with, and in violation of, the agreement between complainant and defendant Cherry, which was found to have been entered into as alleged; declaring Mary Frances Cherry to be a trustee of the legal title to the premises during the period of the life of John Cherry, with remainder over in absolute fee simple to complainant, her heirs, and assigns forever, freed and discharged of all liens and encumbrances of every kind and character; directing the said Mary Frances Cherry to execute and deliver to

the complainant a deed in due form conveying to her the fee-simple title to said premises, freed of all encumbrances, and subject to a life estate for the life of said John Cherry; and enjoining the defendants from conveying or encumbering said premises in any manner inconsistent with the said agreement between complainant and the said John Cherry. It was further decreed that defendants deliver the immediate possession of said premises to complainant, subject to her obligation to pay the said rental of $11 per month, and the water tax thereon, during the life term of said John Cherry; and that they pay all the costs of the suit.

From this decree the defendants have all appealed.

*Mr. James B. Archer, Jr.,* and *Mr. Charles H. Merillat* for the appellants.

*Mr. Charles A. Douglass* and *Mr. Levi H. David* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The demurrer was correctly overruled. The bill describes the premises with precision, and alleges a contract relating thereto that is certain in its terms and founded upon a valuable consideration. The purchase of the premises by the defendant for the occupation of the complainant; her admission into full and exclusive possession in accordance with the terms of the alleged contract; her performance of the entire obligation on her part, constitute sufficient part performance of the parol contract to take it out of the operation of the statute of frauds, that is to say, to prevent the statute from being converted into an instrument of fraud.

Peaceable possession alone, entered into under a parol contract to convey land, is generally regarded as sufficient ground for equitable relief, notwithstanding the statute of frauds, be-

cause, ordinarily, it works a material change in one's plans for the future.

Repudiation of the contract thereafter, followed by eviction as a trespasser or mere occupant at will, would produce conditions of loss and damage the computation of which by a pecuniary standard would be largely matter of conjecture. It is this element of uncertainty which justifies resort to the jurisdiction of equity for adequate and complete relief through its power to decree specific performance. In addition to this induction into possession with its ordinary consequences, the obligation of the complainant, which she fully performed, required the rendition of peculiar and delicate services, without intermission, for a period of nearly three years. Caring for an aged, and practically helpless, mother required constant acts of help and attention, sometimes of a disagreeable character, performed too with the affectionate consideration reasonably to be expected of a child, that money is ordinarily powerless to purchase. The law furnishes no certain standard for the compensation of such services by the award of pecuniary damages.

. The facts alleged in the bill make a case clearly within the rule governing in this jurisdiction. *Whitney* v. *Hay,* 15 App. D. C. 164, 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537. The citation of other authority is unnecessary.

The allegations of the bill having been held sufficient, it remains to consider whether they have been sustained by the evidence.

The following facts have been established beyond a question: That plaintiff, with her husband and child, occupied a rented house a few blocks distant from the home of defendant Cherry. That this house was suitable as a residence, and was rented for $8 per month. That Mrs. Cherry was about seventy years of age, and was subject to attacks of vertigo. Whether she suffered from paralysis is doubtful, but she was infirm, subject to fainting attacks, frequently confined to her bed, and in need of frequent close attention. That she had fallen during one of her attacks and dislocated or seriously injured her hip, and was compelled thereafter to use a crutch. That this condition, be-

ginning before July, 1897, grew worse until her death in April, 1900. That John Cherry was employed as a night watchman in one of the parks, and was compelled to be absent from his house generally from late in the afternoon until a late hour at night; and necessarily had to have some rest during a part of the day. That the only other occupant of his house was a granddaughter, —the daughter of complainant,—who was then about twelve years old, and a daily attendant at one of the public schools. That the only other daughter of defendant was a married woman with several children, whose husband was in a bad state of health. That complainant, for several years between the death of her first husband and her marriage with her present one, had lived with her parents assisting in the household work and doing other things. That prior to July, 1897, a kindhearted neighbor, Mrs. Nolan, had been a frequent visitor of Mrs. Cherry, nursing and caring for her during her sudden attacks. That Mrs. Nolan removed in the summer of 1897, and was unable to continue her friendly services. That complainant and her husband were poor people, living upon the returns of their labor. That the husband was a street-car conductor and had to walk to the car barns daily to take out the earliest, or one of the earliest trains; and the removal to the new and more expensive place of residence took him further away therefrom. That complainant expended a little money and some labor in repairing and improving the premises. Without regard to the alleged contract, it clearly appears that John Cherry's chief motive, at least, for purchasing the house was to have complainant near her mother.

Complainant and her husband testified positively to the contract as alleged, and that they removed to and took possession of the new house in accordance with it. They also testified that complainant was constant and kind in nursing her mother and doing most of her housework from the time of entering into possession until the latter's death.

John Cherry positively denied entering into any agreement with complainant beyond that of leasing her the house at a re-

duced rate. He also denied the performance of any services for his wife beyond some occasional visits and attentions.

Complainant introduced several witnesses who testified to declarations and admissions of her father tending to prove the existence of the agreement as alleged. Two of these—Mrs. Mary Connelly and Rosella Reeves—testified to statements made by defendant Cherry, to the effect that he had purchased the house for complainant so that she could care for and nurse her mother while he was away from home; that the latter was to care for her mother and to pay $11 per month as rent,—which was the amount of monthly dues to the building association,—and that the house was to be hers at his death.

These witnesses were neighbors and acquaintances of all the parties, and had no interest whatever in the subject-matter. Several other disinterested and unimpeached witnesses testified to declarations made by defendant Cherry in regard to the transaction. These did not testify to a full statement of the particular contract as did the two before mentioned, and the declarations which some of them recited might well be referred to a general intention to devise the property to his daughter without any actual contract so to do. At the same time they contradict the evidence of defendant, and tend also to establish the existence of some agreement. or contract obligation to make such a disposition.

Evidence of declarations made by a party is often unreliable and unsatisfactory, and is to be scrutinized with care; but, in the very nature of cases of this kind, the contract or agreement sought to be established is generally to be inferred from the situation, circumstances, and relations of the parties, supported by evidence of verbal statements. *Brown* v. *Sutton,* 129 U. S. 238, 242, 32 L. ed. 664, 667, 9 Sup. Ct. Rep. 273; *Whitney* v. *Hay,* 15 App. D. C. 164, 186.

We agree with the learned trial justice that the testimony given of the specific agreement is strongly corroborated by the relations and conditions of the parties, by the circumstances surrounding the transaction between them, and by the evidence of the defendant's declarations. Moreover, the defendant's

answer admits the execution of a will which would have carried out the agreement to the letter if unrevoked before his death; and, notwithstanding his averment that it was not made in compliance with an agreement to that effect, no other satisfactory explanation of its execution, at the time alleged, is given.

It is contended on behalf of the appellant that the induction into the possession of the premises is referable to a contract of lease equally with that alleged in the bill. In this we cannot concur. Had the complainant been in possession of the premises under a lease at the time of making the agreement, her possession would undoubtedly be referable thereto, and would not therefore constitute an act of part performance of a subsequent parol agreement to make title, that would prevent the operation of the statute of frauds. But there is no pretense that such was the fact. The payment of the special monthly rent charge was one of the stipulations of the general agreement, and consistent with it. It was part of the consideration which the complainant was induced to promise. It was considerably more than she was then paying for a suitable house, yet in the condition in which her mother was, it was not probable that her special care and attention would be long required; and the defendant's advanced age made it appear probable that the duration of the rent paying period could not be long. The house cost $2,400; and the fact that complainant, considering her limited means, was willing to give up a suitable and cheaper home and assume the burden of the greater rent charge, as well as the onerous duty of taking care of her mother, is one of the circumstances surrounding the transaction which tends to raise the inference that she acted upon an agreement that she should have a complete title upon the defendant's death.

There is some conflict in the evidence as regards the amount and character of the care and attention which the complainant gave to her mother in the performance of her obligation. That she rendered considerable service is clear, and there is nothing tending to show that the mother was not satisfied with it to the last moment of her life.

Upon the whole, we agree with the learned justice who ren-

dered the decree, that the weight of the evidence establishes the fact that complainant substantially and fairly complied with her undertaking.

Concurring in the conclusions both of law and fact, we must affirm the decree entered, with costs.    It is so ordered.

*Affirmed.*

A motion for a rehearing was overruled June 13, 1905.