# O'HANLON v. GRUBB.

---

LANDLORD AND TENANT; APARTMENT HOUSES; NEGLIGENCE.

1. Apartment-house tenancies are distinguishable in some respects from ordinary tenancies. (Following *Iowa Apartment House Co.* v. *Herschel,* 36 App. D. C. 457.)

2. While positive stipulations of a written instrument are controlling, yet when it is apparent that the instrument does not express the whole agreement of the parties, parol evidence is admissible to show what the agreement was.

3. *Semble.* Although the lease of one of a number of apartments in an apartment house containing an elevator and a heating plant for the entire house, controlled by the owner, is silent as to whether the landlord shall heat the apartment or furnish the tenant elevator service, the landlord is nevertheless bound to furnish heat and elevator service.

4. Evidence that the agent of an apartment-house owner, before the signing of a lease of one of the apartments, told the lessee that the apartment would be heated by steam, is admissible in an action by the tenant against the owner for damages caused by a leaky steam radiator in the apartment, where the lease is silent on the subject of heating, and merely refers to the number of the apartment, without further description, and where the evidence also shows that all of the apartments in the house are heated by one heating plant under the control of the owner.

5. The obligation of an apartment-house owner to his tenant to furnish heat for the apartment carries with it the duty of providing means for the proper fulfilment of such obligation, and the right of access to the apartment at reasonable times for the purpose.   (Following *Iowa Apartment House Co.* v. *Herschel*, supra.)

6. In an action by the tenant of an apartment in an apartment house heated by means of a steam-heating plant, which furnished heat for all of the apartments in the house, and which was under the control of the owner, for damages caused by a cracked radiator in his apartment—it was *held* that the plaintiff was not guilty of contributory negligence as matter of law, requiring a verdict to be directed against him, where it appeared, among other things, that he complained to the janitor and agent of a leak in the radiator; that he placed a saucepan below the leak, into which a small amount of water dripped from time to time; and that sometime afterwards, while the radiator still leaked slightly, he left his apartment unoccupied for two days; and that on his return the leak had developed into a crack from which the steam had escaped and damaged his furniture and effects; and that while the janitor did not have a key to the apartment, there was nothing to show that the  agent did not have one.

7. In an action by the tenant of an apartment in an apartment house, against the owner, for damages to his furniture and household articles caused by a leaky steam radiator in his apartment, the measure of damages is not the cost of the repair of the radiator, or the value of the apartment with the defective radiator in it; and it is not error for the trial court in such a case to permit the jury to consider the amount shown by the plaintiff to have been expended by him in repairing his damaged goods.

No. 2333.   Submitted January 4, 1912.   Decided February 5, 1912.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for injuries to personal property alleged to have been caused by the defendant's negligence.        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal [by Rodger O'Hanlon,] from a judgment for the plaintiff, Harry J. Grubb, appellee here, in the supreme court of the District in an action for the recovery of damages

to furniture and household articles alleged to have been occasioned by defendant's negligence in failing to repair a steam radiator in one of the several apartments in the defendant's apartment house, "The Newry," which apartment plaintiff was occupying under a written lease.

On November 29, 1909, plaintiff, accompanied by defendant's agent, Mr. Walshe, examined apartment No. 43 in question, with the object of renting it. Seeing radiators in the apartment, he inquired of Mr. Walshe if "it would be steam heat or hot water." Mr. Walshe said "steam heat," whereupon plaintiff signed the lease. An exception was noted by the defendant to the admission of this conversation, on the ground that it tended to contradict, alter, or change the terms of the lease.

The lease by its terms covered "Apartment No. 43, 'The Newry,'" without further description. Under one of the covenants, plaintiff agreed to pay the water rent and gas bills. The instrument was entirely silent on the subject of heating.

It further appeared that the apartment had been heated by the defendant's agent in pursuance of said understanding, and that no other way was provided by which it could have been heated. The plaintiff testified that on the day he moved into the apartment "he noticed a little leakage in the radiator; that the leakage was just a little dripping, which would amount to about a gill in twenty-four hours; that he put a saucepan under it to catch it, and that as soon as he noticed the leak he asked the janitor to come up and look at it, stating to him that possibly the joints needed tightening;" that the janitor looked at the raditor, and promised to notify Mr. Walshe; that the defect continued, a little more water leaking out every day; that the janitor was repeatedly notified, and the agent, Mr. Walshe, was also notified; that on Friday night of the last of the year plaintiff and his wife closed the apartment for the purpose of spending New Year's Day with relatives in Virginia; that, before leaving, plaintiff "went around and turned off every radiator, but not entirely off, because he did not wish the apartment to get chilled before they returned; that he left the saucepan under the leak; that when they returned to their apartment New Year's

(Sunday) night, about 8 o'clock, it was much "dilapidated" by reason of the bursting or cracking of one of the cast-iron sections of the radiator and the consequent escape of steam into the apartment; in other words, the leak which had theretofore existed had suddenly developed into a crack about 4 inches long.

The plaintiff did not know the nature of the trouble until it was pointed out to him by the steam fitter when the radiator was repaired. Plaintiff, under cross-examination, stated that he did not try to get anyone else to repair the defect in the radiator, because he had been instructed by the defendant's agents to notify them of such defects.

The janitor of the building, testifying for the plaintiff, stated "that the apartment house was heated by a steamheating plant constructed in the building; that he was employed by Mr. Walshe, *and had full charge and management of the heating plant;* that it was his duty to look after the whole building and to report any complaints to Mr. Walshe; that he went around to all the apartments every day and gave the tenants instructions about working the radiators; that Mr. Grubb notified him of the trouble with the radiator in his apartment several times, and that he always notified Mr. Walshe, and that Walshe said he would have it fixed." The witness said he had no key to plaintiff's apartment.

The steam fitter who examined the radiator after it was removed, testifying for the defendant, said that the crack in the radiator, while about 4 inches long, was scarcely wide enough to admit the entry of a razor blade. Mr. Walshe, in his testimony in behalf of the defendant, said nothing about not having a pass-key to the various apartments of the house.

The defendant, at the close of all the evidence, moved for a directed verdict on the ground: First, that there was no express or implied agreement as to repairs to the radiator; second, that no negligence had been shown on the part of the defendant; and, third, that contributory negligence, as matter of law, had been shown on the part of the plaintiff. The motion was overruled and exception noted.

The defendant further excepted to the granting of one of

plaintiff's prayers on the question of damages, through which the jury was permitted to consider the amount shown by the evidence to have been expended by the plaintiff in repairing the household articles injured by the bursting of the radiator, the defendant contending that the measure of damages was either the cost of repair of the radiator, or the value of the premises with the defective radiator therein.

*Mr. Daniel W. Baker, Mr. Joseph C. Sheehy,* and *Mr. Frank J. Hogan* for the appellant.

*Mr. E. Beverly Slater* for the appellee.

*Mr. Justice Robb* delivered the opinion of the Court:

The pivotal question in this case is whether there existed any liability on the part of the landlord to repair the defective radiator. As was said in *Iowa Apartment House Co.* v. *Herschel,* 36 App. D. C. 457, we "are not dealing with an ordinary tenancy. The tenancy here relates to an apartment house,—a class of tenancy of comparatively recent origin, and one which, in some respects at least, is to be distinguished from other classes."

It is a matter of common knowledge and observation that, to quite an extent, this class of tenancy in the larger cities has displaced the old. Instead of a tenement complete in itself and having its own heating facilities, the modern apartment house may contain anywhere from a dozen to a hundred or more so-called apartments, all heated from a main plant operated and exclusively controlled by the landlord. In all the larger houses the landlord also operates and maintains an elevator system for the general accommodation of the occupants of the house. He controls and keeps in repair common hallways and entrances. In short, the tenant has possession of nothing more than the rooms of his apartment, the landlord controlling everything else. Leases are of course entered into in the light of this common practice and understanding, and, while their positive

stipulations are absolutely controlling, parol testimony may be introduced when it is apparent that the written instrument does not express the whole agreement of the parties. *Naumberg* v. *Young*, 44 N. J. L. 331, 43 Am. Rep. 380; *Potter* v. *Easton*, 82 Minn. 247, 84 N. W. 1011; *Lillard* v. *Kentucky Distilleries & Warehouse Co.* 67 C. C. A. 74, 134 Fed. 168.

In the light of the foregoing observations, was it error to admit the testimony as to the conversation preceding the signing of the lease? The lease, as we have seen, is entirely silent on the subject of heating. It is equally silent as to what constituted "Apartment No. 43." The evidence showed that this apartment was provided with steam radiators and with no other heating means; that these radiators were part of the steam-heating plant constructed in the building, and over which the defendant retained exclusive control. That the radiators were in the apartment for practical, and not ornamental, purposes is apparent, for the evidence shows that heat was supplied through that means. Supposing nothing whatever had been said concerning heat, could it have been successfully contended, in view of the circumstances just detailed, that the plaintiff would have been without redress had the defendant neglected or refused, after the commencement of the tenancy, to heat the apartment? We think not. There is nothing in the lease concerning elevator service, nor is there anything therein concerning the duty of the defendant in respect to the halls and entrances to the building, and yet, under the decisions, all these things were implied incidents of the tenancy. Thus in *Sawyer* v. *McGillicuddy*, 81 Me. 318, 3 L.R.A. 458, 10 Am. St. Rep. 260, 17 Atl. 124, the defendant was the owner of a building on the second floor of which were several tenements occupied by different tenants and having a common stairway. It was held that the defendant, in the absence of an express agreement to the contrary, was charged with the duty of caring for and maintaining this stairway. In *Shipley* v. *Fifty Associates*, 101 Mass. 251, 3 Am. Rep. 346, a tenement building was leased to different tenants under leases requiring them to make repairs. It was held that, inasmuch as the possession of the

roof was in the owners, they were under obligation to repair it. So, in *Looney* v. *McLean,* 129 Mass. 33, 37 Am. Rep. 295, it was held that a landlord who lets rooms in a building to different tenants, with a right of way in common over a staircase, is bound to use reasonable care in keeping such staircase in repair. The court, after stating the general rule that a tenant takes the premises as they are, said: "But this rule applies only to premises which, by the terms of the lease, have passed out of the control of the landlord into the exclusive possession of the tenant."

Had this suit grown out of a failure on the part of the defendant in respect to an implied covenant regarding hallways or elevators, parol evidence would have been admissible,—not to vary the terms of the lease, but to annex an incident. We think such evidence clearly admissible for the purpose of proving what was really covered by the terms of the lease.

Under the authority of the *Iowa Apartment House Case,* 36 App. D. C. 457, the obligation to furnish steam heat carried with it the duty of providing and maintaining means for the proper fulfilment of that obligation. The implied covenant to keep this heating system in repair carries with it the right on the part of the landlord to enter the premises at reasonable times for the purpose of fulfilling that obligation. Such a control of the premises on the part of the landlord is not inconsistent with the possession of the tenant as the owner of the particular estate during the tenancy. *Miles* v. *Janvrin,* 200 Mass. 514, 86 N. E. 785.

It is next contended that the plaintiff was guilty of contributory negligence as matter of law. In the first place, the plaintiff was not a steam fitter, and, in the second place, there is no evidence in the record that anyone not possessing some knowledge of such matters would have had reason to anticipate the sudden enlargement of the defect in the radiator. The plaintiff himself testified that he saw no crack until after the radiator was taken out, and did not, until that time, know the nature of the defect. He repeatedly directed the attention of the defendant's agent to the leaky condition of the radiator, and they

promised to have it repaired. Defendant's janitor, who was in charge of the entire heating system, and presumably much more familiar with radiators and their defects than the plaintiff, did not even suggest the imminence of a greater break or the necessity completely to turn off the steam. For a whole month the precautionary measures taken by the plaintiff had been sufficient. He was to be away for two days only. While the evidence shows the janitor had no key to the apartment, it does not show that the agent did not have one. It does not even appear that the plaintiff knew that the janitor was without a pass-key, but, aside from that, we do not think the conduct of the plaintiff, in the circumstances, was such that reasonable men would be bound to say he was negligent. The question was carefully submitted to the jury under a prayer prepared by the defendant. This was all the defendant could ask.

The next and last question relates to the measure of damages. There was ample evidence before the jury from which it might have found that the defendant, through his agents, had reason to believe that the defect in the radiator, if not repaired, would be likely to produce the results of which the plaintiff complains. Having exclusive control of the heating system, it was incumbent upon the defendant to exercise due care in maintaining that system and keeping it in repair. What would constitute negligence on the part of the agent charged with the immediate control and supervision of this system might not, for the reasons previously suggested, constitute contributory negligence on the part of a tenant. The failure of the defendant, after knowledge of the defect, to repair it, coupled with knowledge of the consequences reasonably likely to ensue, constituted negligence, and rendered the defendant liable for the damages immediately resulting from such negligence.

The case relied upon by the defendant, *Thompson* v. *Clemens,* 96 Md. 196, 60 L.R.A. 580, 53 Atl. 919, is not in point. That was an action for personal injuries growing out of an alleged failure on the part of a landlord to make certain general repairs of premises under the exclusive control of the tenant. The damages in such a case are much more remote and consequential.

The court, however, ruled that a landlord "may under some circumstances be liable for damages for personal injuries by reason of a negligent failure to make repairs." In Massachusetts it has been held that there can be no recovery for personal injuries against a landlord, even for negligent failure to make repairs, unless the landlord has assumed the duty of looking after the condition of the premises and providing for their safety for the protection of the tenant. *Miles* v. *Janvrin,* 196 Mass. 431, 13 L.R.A.(N.S.) 378, 124 Am. St. Rep. 575, 82 N. E. 708.

The plaintiff in the case under consideration is not seeking damages for personal injuries growing out of the failure of the landlord to make general repairs, but is asking to be reimbursed for the actual damages suffered as the immediate consequence of defendant's negligence in failing to repair an instrumentality under the exclusive control of the landlord.

Judgment affirmed, with costs.                    *Affirmed.*