758

## OCHS et al. v. WEIL.

No. 8633.

United States Court of Appeals
District of Columbia.

Argued April 5, 1944.

Decided May 15, 1944.

Mr. Mark P. Friedlander, of Washington, D. C., for appellant.

Mr. George C. Gertman, of Washington, D. C., for appellee.

Before GRONER, C. J., and MILLER and ARNOLD, JJ.

GRONER, C. J.

This is a suit for specific performance of a contract for the sale of real estate.

The District Court, on motion of defendant (appellee), dismissed the complaint because of "failure to state a claim upon which relief can be granted."[1] The case stated is this:

Some time prior to June 4, 1943, the defendant, Dr. Weil, employed Lawrence D. Engel, Inc., a local real estate dealer, to sell for him the property located at 3147 M Street, Northwest, in the City of Washington. Engel almost immediately obtained from Sam Ochs and Jack Small, of Washington (appellants), an offer to purchase the property at $24,500 in cash, and at once (June 3, 1943) telegraphed Dr. Weil at his Chicago address:

"Have cash offer $24500 M Street property. Advise immediately if accepted."

The next day, June 4, 1943, Dr. Weil responded as follows:

"Accept M Street offer. Ask for one thousand deposit."

Upon receipt of this telegram Engel accepted $1,000 from the purchasers, and Engel and the purchasers signed on an agent's form, in general use in the District of Columbia, a writing as follows:

"LAWRENCE D. ENGEL, INC.
REAL ESTATE, LOANS, INSURANCE
709 EYE ST., N. W.

"Washington, D. C. June 5, 1943

"RECEIVED OF *Sam Ochs and Jack Small* a deposit of *One thousand* dollars ($1,000.), to be applied as part payment of the purchase of lot ......, square ......, improved by premises No. 3147 *M St. N. W. Washington,* District of Columbia, at the price of *Twenty-four thousand, five hundred* dollars ($24,500.), on the following terms, to wit: $ *Cash* in cash (of which amount the above deposit has been paid), and purchaser ...... Deed of Trust on property for the sum of $........ bearing interest at ...... per cent and due ................ and purchaser to give a second Deed of Trust for $................ payable in one note with interest at the rate of six per cent per annum, until paid; said principal and interest payable in monthly installments of $................ on or before a set day in each and every month after date until paid, each installment when so paid to be applied, first, to the payment of the interest on the amount of principal remaining unpaid, and the balance thereof credited to the principal.

"Property sold as a good record title or deposit to be returned and sale declared off. Examination of title and conveyancing and revenue stamps at the cost of purchaser; provided however, that if upon examination the title should be found defective and not a good record title and such defect or imperfection is not removed by the vendor within the time herein specified, then the cost of said examination shall be paid by the vendor; however, in no event is the agent to be held liable for loss or damage by reason of title proving defective.

"Taxes, interest, rents and insurance to be adjusted by calculation to date of transfer. Taxes and assessments whether levied or not, for special improvements already made, to be paid by vendor.

"Purchaser is required and agrees to make full settlement in accordance with the above terms of sale within *when title is clear* days from this date. If purchaser fails to make full settlement within the time herein specified, deposit will be forfeited; it being agreed that one-half of the amount of said forfeited deposit· shall be paid LAWRENCE D. ENGEL, INC., as compensation for his services. In the event of forfeiture of deposit, the purchaser is not relieved from obligation to comply with the terms of sale. Vendor to execute the usual special warranty deed. Seller agrees to pay agent a commission of 5 per cent on amounts to $5,000 and 3 per cent on all sums above that amount when sale is closed.

"No guarantees, repairs, alterations, or improvements will be made by sellers of this property unless agreed to in writing and made part of this receipt, and no employee has the power to change or alter the terms of this contract.

"Signed in triplicate. Deposit accepted subject to approval of owner.
    "LAWRENCE D. ENGEL, INC.
    "By M. E. MUDD  (SEAL)
      "Agent for Seller
    "JACK SMALL
    "SAM OCHS
      Purchasers."

---

[1] Federal Rules of Civil Procedure, rule 12(b) (6), 28 U.S.C.A. following section 723c.

The printed form used by the parties was filled in at the time of execution by the insertion of (1), the names of the purchasers, (2), the amount and receipt of the deposit, (3), the designation and description of the property, (4), the price, (5), the terms and (6), the date when the transaction was to be closed by delivery of deed and payment of purchase price. The printed portions having relation to transactions involving deferred payments and not applicable to the transaction in hand were not crossed out, but the terms which the parties then intended should apply are perfectly clear. Engel mailed the paper to Dr. Weil, who never signed it or returned it, and declined to carry out the sale. Appellants then and now represent themselves as ready, willing and able to comply with the agreement.

Enough has been said, we think, to show that the single question for decision is whether the agreement to sell the M Street property was valid under the applicable provision of the Statute of Frauds.[2]

The trial court, as we have seen, answered this question in the negative, and counsel for appellee insists this is correct for the following reasons:

1. The telegrams do not empower the broker to bind Dr. Weil in any form or respect.

2. The broker understood the limitation on his authority by sending the deposit receipt to Dr. Weil for his approval and signature.

3. The general authority to a broker to sell does not include authority to make or sign a binding agreement, or memorandum of agreement, in behalf of his principal.

4. There is no contract to be performed by Dr. Weil.

Unquestionably, an agreement of sale under the statute is valid and enforceable only when it is in writing and there is a sufficient description of the thing sold, the price to be paid, and the names of the party selling and the party buying. None of these elements can be supplied by parol testimony.[3] On the other hand, the nearly universal rule is that a complete contract binding under the Statute of Frauds may be gathered from letters, writings and telegrams between the parties relating to the subject matter of the contract when so connected with each other that they may be fairly said to constitute one paper relating to the contract.[4] An examination of the writing, which we have copied in full in the forepart of this opinion, clearly identifies the buyers by name and the reference to the property to be sold is amply sufficient to identify it, and the purchase price and manner of payment are set out in full. The other conditions of the writing are the usual conditions invariably present in the sale of lands, i. e., the provision for the examination of title, the adjustment of taxes, interest, rents and insurance, and the date of closing the contract by delivery of the property and payment of the balance of the purchase price; and no point is made by the seller as to any of these. The only respect in which the writing fails to completely measure up to the requirements of the Statute of Frauds is in its failure to name the seller, and this omission, unquestionably, would be fatal if his identity were not disclosed by other writings relating to the subject matter of the contract.[5] This brings us then to the question whether the written agreement, when read in connection with the telegrams, sufficiently meets the requirement. And of this there can be no doubt. The first telegram to Dr. Weil from his Washington real estate agent reads:

"Have cash offer $24500 M Street property. Advise immediately if accepted."

---

[2] D.C.Code 1940, § 12—302. "No action shall be brought whereby to charge * * * any person * * * upon any contract or sale of lands * * * or any interest in or concerning them * * * unless the agreement * * * or some memorandum or note thereof, shall be in writing, * * * and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized."

[3] Grafton v. Cummings, 99 U.S. 100, 106, 25 L.Ed. 366; Shell East. Pet. Prod., Inc., v. White, 62 App.D.C. 332–336, 68 F.2d 379–381.

[4] Ryan v. United States, 136 U.S. 68, 83, 10 S.Ct. 913, 34 L.Ed. 447, and see also Shell East. P. P., Inc., v. White, supra; Tucker et al. v. Gray et al., 82 Fla. 351, 90 So. 158; Barkhurst v. Nevins, 106 Neb. 33, 182 N.W. 563; Woodruff O. & F. Co. v. Portsmouth Cotton Oil Refining Corp., 4 Cir., 246 F. 375–378.

[5] Ryan v. United States, supra.

And to this Dr. Weil in his own name replied:

"Accept M Street offer. Ask for one thousand deposit."

To argue, as counsel for appellee does, that this exchange of telegrams did not empower the broker to bind Dr. Weil seems to us to be wholly without justification. The words of Dr. Weil's telegram "Accept * * * offer", taken in connection with the broker's query—"Advise * * * if accepted," are capable of only one construction, namely, as authority to the broker in his behalf to close the offer and to demand a deposit of $1,000 as evidence of good faith that the buyers would observe its terms; and the writing which followed and which the broker signed as "Agent for Seller," was an exact and precise carrying out of the authority granted to him by the owner in the manner and under the conditions named in the telegram. And while the name of Dr. Weil does not appear at any place in the agreement, it is amply shown when that writing is read with the telegrams.

Nor do we think that the conclusion just reached is in any way weakened by the mere fact that the broker sent on the agreement to Dr. Weil. As this case never progressed to the point of showing what else, if anything, the broker wrote to Dr. Weil, we have the right to assume, indeed, the duty to assume, that he did no more than send him the paper to acquaint him with the successful carrying out of his instructions.

The concluding sentence in the printed form used in making the agreement —that the "deposit" was subject to the owner's approval—is meaningless in the fact that such approval had been already given in the exchange of telegrams. And so also the argument of counsel for appellee that the general authority of a broker to sell does not include authority to make a binding agreement has no relation to the situation such as we have described, for, as the case now stands, there was not only the general authority, but also specific authority, as we have seen, to close the agreement upon the deposit by the buyers of $1,000. We are, therefore, of opinion that the court below was in error in dismissing the complaint, and for that reason the judgment is reversed and the case remanded for answer and trial on the merits.

Reversed and remanded.