**BREWOOD v. COOK et al.**
**No. 11559.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 18, 1953.

Decided June 30, 1953.

Petition for Rehearing en Banc
Denied Sept. 15, 1953.

Prettyman, Circuit Judge, dissented.

Mr. R. Duncan Clark, Washington, D. C., with whom Messrs. Clyde D. Garrett and Andrew T. Altmann, Washington, D. C., were on the brief, for appellant.

Mr. Byron N. Scott, Washington, D. C., for appellees.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The District Court decreed specific performance of a contract it found had been entered into by the appellant to sell and convey to appellees, husband and wife, two lots of land which he owned in the District of Columbia. The position of appellant in seeking reversal is that no contract was made, that evidence with respect to it was admitted in violation of the parol evidence rule, and that if a contract properly proved did exist it was unenforceable under the statute of frauds because not evidenced in writing.[1]

The controverted transaction arose in connection with negotiations for the purchase by appellees of a tract of land which as a whole contained ten lots improved by a substantial dwelling house. Eight of the lots, with the improvements, were sold by appellant to appellees under a written contract which the parties fully performed. The price paid was $49,500. Appellees claimed there was a further agreement that the remaining two lots would also be conveyed to them, at a price and on terms respecting taxes agreed upon, at such time as appellant's wife became reconciled to parting with all of the land, which she was then reluctant to do. Appellant, as has been stated, was himself the owner of these lots. Appellees assert that about two years later appellant advised them that his wife had then become reconciled to conveyance of the remaining two lots, but he insisted upon a higher price than appellees claim had been agreed upon.

Considerable testimony was taken and carefully considered by the District Court, Judge McLaughlin sitting. The record reflects that both judge and counsel were well aware of the factual and legal issues involved, namely, whether there had been a meeting of the minds as to the two lots, whether the written contract which was in fact carried out constituted the whole agreement, whether parol evidence could be admitted to establish another contract covering the remaining two lots, and whether, assuming proof by competent evidence of a valid oral contract for the two lots, the statute of frauds prevented its enforcement.

Since the case must stand on its special facts we need not review in detail the conflicting evidence. We cannot say how we would resolve the factual issues were this task primarily for us. We are clear, however, that the findings worked out from the testimony by the trial judge rest sufficiently in the evidence to preclude our setting them aside under the rule governing our review. Rule 52(a), Fed.R.Civ.P.[2] We venture to say that it is not possible to reach a solution reflecting the factual situation with absolute certainty. While this may be due in part to appellees' failure to obtain written evidence of the asserted contract for the two lots, as should have been done, nevertheless the findings which the trial court made infuse the evidence with sufficient substance and form to withstand challenge on appellate review.

The court found that the disputed contract covering the two lots was made, was collateral to and an essential inducement of the written contract which was performed, that accordingly the former could be established by parol evidence, that possession of the two lots was

---

1. § 12–302, D.C.Code (1951).

2. " * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * * " Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A.

entered into by appellees in the belief and under the theory that they had a binding contract for their purchase, that appellees made permanent improvements of substantial value upon them, and that the condition governing the time of conveyance by appellant was met, whereupon his oral agreement to convey became binding upon him.[3]

This resolution of the facts by the District Court goes far toward solving the legal issues as well. For the law does not exclude proof by parol evidence of a contemporaneous agreement in addition to and not inconsistent with or a variation of a written agreement between the same parties. Bell, Rogers & Zemurray Bros. v. Jenkins, 1930, 221 Ala. 652, 130 So. 396; Cox v. Fleisher Const. Co., 1929, 208 Iowa 458, 223 N.W. 521; Roof v. Jerd, 1929, 102 Vt. 129, 146 A. 250, 68 A.L.R. 235. See, also, Champlin Refining Co. v. Gasoline Products Co., 1 Cir., 1928, 29 F.2d 331. Where the parties did not adopt the writing as a statement of the whole agreement, parol evidence of an additional one is admissible. 3 Williston, Contracts § 636 (1936). This rule is sometimes referred to as the partial integration doctrine, due to the fact that only part of the whole transaction is integrated in the writing. As an instance where the facts would not permit application of this rule, see Seitz v. Brewers' Refrigerating Mach. Co., 1891, 141 U.S. 510, 517, 12 S.Ct. 46, 35 L.Ed. 837. The writing was held not to express the whole agreement of the parties in O'Hanlon v. Grubb, 1912, 38 App.D.C. 251, 37 L.R.A.,N.S., 1213; United States Navigation Co. v. Black Diamond Lines, 2 Cir., 1942, 124 F.2d 508, certiorari denied, 315 U.S. 816, 62 S. Ct. 805, 86 L.Ed. 1214; and Cohn v. Dunn, 1930, 111 Conn. 342, 149 A. 851, 70 A.L.R. 740. Additional support for the

admissibility of the evidence now in question is afforded by decisions which hold that parol evidence will be received to prove a contemporaneous agreement which was an inducement to the one placed in writing. Stewart v. Meadows, 8 Cir., 1922, 282 F. 861; Mallard v. Ewing, 1936, 121 Fla. 654, 164 So. 674; Blunk v. Kuyper, 1950, 241 Iowa 1138, 44 N.W.2d 651; Geyser Ice Co. v. Sharp, Tex.Civ. App.1935, 87 S.W.2d 883; Mason v. Cater, 1921, 192 Iowa 143, 182 N.W. 179. See, also, Sale v. Figg, 1935, 164 Va. 402, 180 S.E. 173.

The contract respecting the two lots having been established by evidence thus admissible the appellant, for reasons now to be stated, may not set up the statute of frauds to bar its enforcement against him. With adequate supporting evidence the court found that appellees would not have executed the written contract or accepted conveyance of the eight lots and improvements, at a cost to them of $49,500, if it had not been for the inducement of appellant's simultaneous agreement to convey subsequently the two remaining lots. This factual situation brings the case within the rule that one who thus induces another by a parol agreement to change his position so materially that unless the inducing agreement is enforced a fraud results, is estopped to set up the statute of frauds to bar such enforcement. This rule is supported by numerous decisions of the courts and other authorities. An extensive discussion of the cases and texts, the latter including 2 Pomeroy, Equity Jurisprudence § 804, and Bigelow, Estoppel p. 640 (6th ed.), is contained in Vogel v. Shaw, 1930, 42 Wyo. 333, 294 P. 687, 75 A.L.R. 639.[4] We need not and do not decide whether the entering into possession of the two lots by appellees, found by the trial court to be referable to the oral con-

---

3. The wife of appellant was not a party to the agreement; but the decree below, like that approved in Allison v. Mackey, 1951, 88 U.S.App.D.C. 154, 188 F.2d 983, preserves her dower rights, and here, again like the situation there, no reason appears to prevent the exercise of discre-

tion to decree specific performance. The wife's interest no longer is in retaining the land.

4. The well known principle that part performance takes a contract out of the statute of frauds is but a particular application of this underlying doctrine of equi-

tract, and the making of improvements thereon, in and of themselves permit appellees to rest upon the part performance rule to take this case out of the statute of frauds;[5] for while possession was taken with appellant's acquiescence, and while the court did find that permanent improvements of substantial value had been placd upon the two lots by appellees, there is also the additional finding explicitly made by the court below, as follows,

"The plaintiffs would not have executed the written contract of May 19, 1948, or accepted conveyance of the property covered thereby had it not been for the inducement of the simultaneous agreement to subsequently convey Lots 32 and 33 for $2,500.00."

As the evidence shows and as is implicit in this finding the protection which the two lots would afford to the home and to the other lots,[6] for which as we have said appellees paid appellant $49,500 under the May 19, 1948, contract, was a critical inducing factor to the main purchase. Once the trial court's finding in this regard is accepted it is obvious that appellees' situation was very materially altered, in a manner which otherwise would not have occurred, by their reliance upon the oral agreement also to convey the two lots. The situation created by appellant's failure to convey could not be rectified by rescission or by an action

for damages for breach of contract. The conclusion of the trial court, therefore, that this oral contract, though not evidenced in writing as required by the statute of frauds, was enforceable in equity, is fully supported by the doctrine of equitable estoppel to which we have referred. Whitney v. Hay, 1901, 181 U.S. 77, 21 S.Ct. 537, 45 L.Ed. 758, affirming 15 App.D.C. 164, 1899, also supports this position though there it was part performance alone, without the element of inducement here present, which moved the court to decree specific performance of the oral agreement respecting land notwithstanding the statute of frauds. See, also, other cases enumerated in note 5, supra, and see note 4, supra.

There is a further question raised by appellant not thus resolved, and which goes to the foundation of appellees' case. Appellant contends the alleged contract respecting the two lots was, all else aside, *nudum pactum* in that the condition, namely, reconciliation of the wife to the conveyance, prevented mutuality at the time the alleged contract was made. Title was not in the wife but in appellant, and the condition stated did not relate to price but only to her psychological adjustment to disposal of all the land by appellant. When this adjustment was made, appellees were notified and were ready to accept title on the agreed terms. No withdrawal having previously been made, it could not then be said either

table estoppel. See Kresge v. Crowley, 1917, 47 App.D.C. 13; Annotation to Vogel v. Shaw, supra, 75 A.L.R. at page 650, 652–653 (1930).

5. This rule is discussed and applied in numerous cases. Neale v. Neales, 1869, 9 Wall. 1, 9, 76 U.S. 1, 9, 19 L.Ed. 590; Williams v. Morris, 1877, 95 U.S. 444, 24 L.Ed. 360; Brown v. Sutton, 1889, 129 U.S. 238, 59 S.Ct. 273, 32 L.Ed. 664; Riggles v. Erney, 1894, 154 U.S. 244, 254, 14 S.Ct. 1083, 38 L.Ed. 976; Townsend v. Vanderwerker, 1895, 160 U.S. 171, 184, 16 S.Ct. 258, 40 L.Ed. 383; Whitney v. Hay, 1899, 15 App.D.C. 164, affirmed, 1901, 181 U.S. 77, 21 S.Ct. 537, 45 L.Ed. 758; Faunce v. Woods, 1925, 55 App.D. C. 330, 5 F.2d 753, 40 A.L.R. 208, though in this case it was found that the con-

tract was not established with sufficient clarity to justify specific performance; Cherry v. Whalen, 1905, 25 App.D.C. 537, 541–542. See, also, Mars v. Spanos, 1943, 78 U.S.App.D.C. 230, 139 F.2d 369; Thalis v. Wurdeman, 1941, 73 App.D.C. 322, 121 F.2d 70; Hoffman v. F. H. Duehay, Inc., 1933, 62 App.D.C. 206, 65 F.2d 839.

6. The record is replete with such evidence. At one point the testimony is that appellees desired the two lots for privacy, at another that they were adamant about having privacy, at another the testimony related to landscaping and preventing someone else from buying the two lots and putting up a house which would impair the whole view from their own house, at another that the two lots insured privacy in the back.

that the agreement remained too vague or that mutuality had not been reached in time. Appellant was then in a position to convey, being relieved of the wifely reluctance which had prevented earlier conveyance. He could no longer validly refuse if the other terms were definite and appellees were ready to meet them, as was found to be the case. Mackey Wall Plaster Co. v. United States Gypsum Co., D.C.Mont.1917, 244 F. 275, 278; Genola Town v. Santaquin City, 1938, 96 Utah 88, 80 P.2d 930.

Affirmed.

PRETTYMAN, Circuit Judge (dissenting).

I am in disagreement with my brethren on this case, and because I think the decision is a dangerous precedent I state my reasons.

The important consideration in the case is the statute of frauds.[1] It provides in pertinent part:

"No action shall be brought whereby to charge * * * any person * * * upon any contract or sale of lands, * * * or any interest in or concerning them, * * * unless the agreement * * * or some memorandum or note thereof, shall be in writing * * * and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized."

The purport of the statute is that, even if there be a complete oral agreement for the sale of lands, no action can be brought on that agreement. The statute itself is without exception.[2] But courts of equity have always been courts of conscience, clothed with ample power and a compelling duty to prevent, or afford relief against, fraud. So they have not hesitated to enforce a verbal contract for the sale of land where refusal to enforce it would perpetrate a fraud. Reference to the English cases [3] shows this rule to have been of ancient origin. This court, in Whitney v. Hay,[4] quoted and relied upon the rule stated by Mr. Justice Brown,[5] as follows:

"'The general principle to be extracted from the authorities,' says Mr. Justice Brown, 'is that if the plaintiff, with the knowledge and consent of the promisor, does acts pursuant to and in obvious reliance upon a verbal agreement, which so change the relations of the parties as to render a restoration of their former condition impracticable, it is a virtual fraud upon the part of the promisor to set up the statute in defense, and thus to receive to himself the benefits done by the plaintiff, while the latter is left to the chance of a suit at law for the reimbursement of his outlays, or to an action upon a *quantum meruit* for the value of his services.'"[6]

The Whitney case went to the Supreme Court from this court and was there affirmed in an opinion in which the subject was fully discussed.[7] So far as I know, the law stated in that case is not only sound law but is also the established law in this jurisdiction.

Out of the foregoing doctrine the courts have evolved specific rules which, as I read the cases and authorities,[8] are accurately stated in the Restatement.[9] That statement is:

"Where, acting under an oral contract for the transfer of an interest

1. 31 Stat. 1367 (1901), D.C.Code § 12–302 (1951).

2. Ochs v. Weil, 1944, 79 U.S.App.D.C. 84, 86, 142 F.2d 758, 760.

3. See, e.g., cases collected in Browne, Statute of Frauds c. XIX (3d ed. 1870).

4. 1899, 15 App.D.C. 164.

5. Townsend v. Vanderwerker, 1895, 160 U.S. 171, 184, 16 S.Ct. 258, 40 L.Ed. 383, 387.

6. Supra note 4, 15 App.D.C. at page 184.

7. Whitney v. Hay, 1901, 181 U.S. 77, 21 S. Ct. 537, 45 L.Ed. 758.

8. See cases collected in Browne, op. cit. supra note 3, § 448 et seq., in 2 Story, Equity Jurisprudence § 1046 et seq. (14th ed. 1918), in 49 Am.Jur., Statute of Frauds §§ 419–423, 427–429, and in 101 A.L.R. 923, 935 n. 33.

9. Restatement, Contracts § 197 (1932).

in land, the purchaser with the assent of the vendor

"(a) makes valuable improvements on the land, or

"(b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price, the purchaser or the vendor may specifically enforce the contract."

That combination of factors has frequently been referred to as "part performance", but, as the comment in the Restatement and likewise the authorities above cited emphatically point out, a mere part performance of an oral contract cannot justify specific performance in the face of the statute. Only certain kinds of acts done in pursuance of the agreement can lift the bar of the statute. They are nowhere more succinctly stated than they are in Purcell v. Coleman,[10] which case also went to the Supreme Court from this jurisdiction and was affirmed. The key to the applicability of the so-called part performance doctrine is that "rescission would be a fraud on the other party, and could not be fully compensated by recovery of damages in a court of law."[11] The cases in this court are uniform to that effect.[12]

One of the more specific requisites to an equity action on an oral contract under these rules is that the acts upon which the claim is based must be such as the party would not have done except for the contract. They must be "referable" to the contract, the authorities say. Lord Hardwicke stated it thus: "* * * it must be such an act done as appears to

the court would not have been done, unless on account of the agreement * *."[13] Chancellor Kent laid down the same principle in two cases.[14] Mr. Justice Story, citing many cases, said: "In order to make the acts such as a Court of Equity will deem part performance of an agreement within the statute, it is essential that they should clearly appear to be done solely with a view to the agreement being performed."[15] Judge Cardozo stated the rule in this way:

"* * * Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.

"'An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance.' Woolley v. Stewart, 222 N.Y. 347, 351, 118 N.E. 847, 848.

"What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done."[16]

The Court of Appeals of Maryland, whence we draw much of our common law, has repeatedly held the same doctrine.[17] But even more conclusive is the

10. 1867, 4 Wall. 513, 71 U.S. 513, 18 L. Ed. 435.

11. Id., 4 Wall. at page 518.

12. Faunce v. Woods, 1925, 55 App.D.C. 330, 5 F.2d 753; Cherry v. Whalen, 1905, 25 App.D.C. 537; Kresge v. Crowley, 1917, 47 App.D.C. 13.

13. Lacon v. Mertins, 3 Atk. * 1, 4, 26 Eng. Rep. 803, 805 (Ch. 1743).

14. Phillips v. Thompson, N.Y., 1814, 1

Johns.Ch. 131; Parkhurst v. Van Cortlandt, 1 Johns.Ch. 273.

15. 2 Story, Equity Jurisprudence § 1048 (14th ed. 1918).

16. Burns v. McCormick, 1922, 233 N.Y. 230, 135 N.E. 273.

17. Shepherd v. Bevin, 1850, 9 Gill 32; Whitridge & Alexander v. Parkhurst, 1863, 20 Md. 62, 85–86; Rosenthal v. Freeburger, 1866, 26 Md. 75.

flat statement of the Supreme Court in Winslow v. Baltimore & Ohio R. Co.,[18] another case from this court, as follows:

"Acts of part performance which will take a case out of the statute must be referable solely to the contract."

With these principles in mind I turn to the case at bar. Not even by the longest possible stretch of the facts could this case be held to meet the foregoing rules. Cook, the alleged purchaser, does not claim that he paid any part of the price of the disputed two lots. His claim is that the possession which he had and the improvements which he made lifted the contract out of the statute. But two propositions seem clear enough to me: (1) that an enforced transfer of the title to him is not necessary to relieve him from any fraud perpetrated upon him and (2) that nothing he claims he did was such an act as would not have been done but for the contract.

The facts upon this phase of the matter are not in dispute. Cook had bought from Brewood a home and a home-tract of eight lots, for which he had paid $49,500, a valuable place, fully landscaped and gardened. Next door, to the rear, were the two lots here involved. On them was a dilapidated brick incinerator and piles of trash, tin cans, etc. Cook—

(1) rebuilt the incinerator—cost $50.00;

(2) bought from Sears Roebuck forty feet of cedar fence and installed it to screen the incinerator and piles of "building material and whatnot", which he had there, from view from his house-lot—cost $67.50;

(3) built a walk (part flagstone and part bituminous), seventeen yards in length, from his house to the incinerator—cost $125.00;

(4) extended the water system already installed throughout the garden onto these side lots, partly to water some shrubs and plants and partly for protection against the fire hazard of the incinerator—cost $63.00.

Cook testified that he rebuilt the incinerator for his own convenience; that there was no other place in the area to put one; that he built the walk to permit the all-weather use of the incinerator; that the fence was to screen the incinerator and piles of "fire-place wood, channel coal, building material, brick, slate, flagstone, and other stuff" from view; and that the waterline was, in part at least, to protect against the fire hazard of the incinerator. All these things, he said, were for his own convenience.

Those facts spell not only the improvements which Cook made but also the full extent of the possession which he had.

There is nothing more natural and normal than for a homeowner to use a vacant next-door lot for some inconsequential convenience, such as an incinerator in which to burn his trash. Conversely it is natural and normal for the owner of a vacant lot to permit an adjacent homeowner to use the lot for some such purpose, especially if he screens it from view and protects it against the hazard of fire. Such an arrangement is not "referable" solely to a contract for the sale of the lot. It is not inconsistent with reasonable theories other than a contract of sale. To me it would be little short of fantastic to suggest that facts such as those just described from the record before us are referable solely to a contract of sale (the expression used by the Supreme Court in Winslow v. Baltimore & Ohio R. Co., supra), or are acts which appear to the court "would not have been done, unless on account of" an agreement for sale of the lots (the expression used by Lord Hardwicke in Lacon v. Mertins [19]), or were done solely with a view to the agreement being performed (the expression of Story), or constituted "performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not exist-

---

18. 1903, 188 U.S. 646, 658, 23 S.Ct. 443, 47 L.Ed. 635, 640.

19. Supra note 13.

ing" (the expression of Judge Cardozo in Burns v. McCormick[20]). Many an absentee vacant-lot owner would be astonished to learn that his indifferent, or friendly, permission to the adjacent homeowner to build on the lot an incinerator, screened and protected, or a fireplace, or a rose garden, is explainable to this court only upon the theory that he has agreed to sell his lot to the homeowner. The cupidity of any unscrupulous homeowner whose absent neighbor has kindly permitted him the use of vacant property for some inconsequential convenience would certainly be stirred if he were to deduce from a decision and opinion of this court that he can pit word against word in a verbal dual over a contract and then establish part performance to defeat the statute of frauds by showing that for his own convenience he built a trash incinerator on the lot.

Cook would not be defrauded if the title to the two lots is not transferred to him. He does not even claim that he was defrauded in the purchase of the homesite of eight lots. They and the house were worth $49,500, so far as this record shows. Cook does not say he is dissatisfied with his new home. He does not offer to return it. He does not want to be returned to his original position. Common sense would indicate that he would have screened the trash and debris from view from his home, even if he did not claim to be the owner of the eyesore. The fence is movable, the record shows. I cannot see wherein Cook would be defrauded if, having spent $306 (the total of his claimed expenditures) for an accessory convenience to his home, thereby incidentally saving the cost of trash removal for several years, he is not permitted to enforce the transfer to him of the title to the lots.

My brethren devote much discussion to the admissibility of the parol evidence which alone established the alleged contract. I do not now dissent from the views they express on that subject. But the statute of frauds does not deal with the existence of contracts; it deals with their enforceability. It is upon this latter topic that I disagree.

Upon the statute of frauds my brethren cite a Wyoming case,[21] finding there a contradiction of what seem to be the well-nigh unanimous authorities, which I have barely sketched in the references I have made. They have abandoned the ground upon which the trial court decided the case, which was substantial improvement. The rule which they find in the Wyoming case is that, if a written agreement to buy one piece of property is induced by an oral agreement of sale of another piece of property, the latter agreement will be enforced by the court. Three answers appear certain to me. In the first place, the rule in respect to an inducement by an oral agreement is not a separate and independent rule from the all-inclusive ones which I have described hereinabove. It is a subsidiary incident to those basic requirements. It rests squarely upon the doctrine of equitable estoppel, arising from a fraud. Refusal to enforce the inducing oral agreement must leave the claimant irrevocably damaged. He must have been defrauded to his damage before he can assert as a remedy an equitable estoppel. So much is clear from all the authorities, so far as I can ascertain.

In the second place, the court in Vogel v. Shaw[22] demonstrated its view that the part performance must be referable solely to a contract of sale. It did so by distinguishing a line of cases contrary to its ultimate position in the case before it, the distinction being that in those cases the acts relied upon as part performance were not referable solely to such a contract. My brethren do not mention referability.

In the third place, I do not find in Vogel v. Shaw what my brethren find there. Vogel, by an oral agreement to transfer a

20. Supra note 16.

21. Vogel v. Shaw, 1930, 42 Wyo. 333, 294 P. 687, 75 A.L.R. 639.

22. Ibid.

lease, induced Shaw to sign a written agreement to buy a piece of property for $12,000. Vogel told Shaw at the time that the buy at $12,000, standing alone, was not a good buy and that Vogel could not afford to make it unless the lease was transferred. The court said that Shaw, by signing the contract to buy and paying part of the purchase price, "irrevocably changed his position for the worse unless he may have the benefit of the Files lease." The court said: "Such a conclusion, so far as Vogel is concerned, would, we think, work a fraud upon Shaw. Over and over again the courts have said that they will not allow the defense of the Statute of Frauds when in so doing it becomes an instrument for perpetrating fraud." So the court held that, having induced Shaw to put himself in a position of considerable damage, from which he could not extricate himself, Vogel would not be heard to plead the statute of frauds in defense to an action for specific performance of the oral agreement. The ruling would have been the same if the oral agreement had been the only agreement. That it induced another agreement was not the basis of the ruling; the basis was that Shaw in reliance upon the oral agreement performed acts which were irrevocably damaging to him unless the oral agreement was performed. The ordinary doctrine of equitable estoppel applied. That is all there was in Vogel v. Shaw.

Nothing like the foregoing appears in the present case. Cook does not even claim that he was damaged by the purchase of his $49,500 home without the two side lots. It is true that in the findings of fact appears the statement that Cook "would not have executed the written contract" had it not been for the "inducement" of the oral agreement. My brethren say the Cooks desired the two lots for privacy, for protection; they testified they wanted the lots. To me that is precisely the sort of testimony—oral, self-serving, and directly contradicted—which the statute of frauds forbids as a basis for an action for transfer of title to real estate. I also add with respect to privacy and protection that a mere contemporaneous desire for some other property is not an "inducement" to a given purchase; to establish "inducement" it must be shown that the acquisition of the desired other property was a compelling reason for the purchase which was actually made. Inducement in the law of contracts, says Bouvier, is "the benefit which the promisor is to receive from a contract". The Cooks did not buy the homesite because they wanted the other two lots; they were not "induced" to buy the homesite by the prospect of acquiring the two lots. Moreover, quite apart from the slimness of the basis for the above-quoted finding of the trial court, the finding itself is not, under the authorities I have discussed, a sufficient premise for ignoring the statute of frauds. Before the oral agreement is enforceable in the face of the statute, Cook must have relied upon the oral inducement to his irrevocable hurt. My brethren so state when they state the rule—"unless the inducing agreement is enforced a fraud results". There is no pretense that Cook was hurt by his written purchase. He was a lawyer, I might add, and he knew full well that an agreement for the sale of real estate must be in writing. As a matter of fact he was careful to put in writing the agreement to buy the eight-lot home-site. He made no written memorandum respecting the other two lots.

The Supreme Court summed up the situation as follows:

"A mere breach of a parol promise will not make a case for the interference of a chancellor. It is plain that a party who claims such interference has the burden of proof thrown on him. He knows that the law requires written evidence of such contracts, in order to their validity. He has acted with great negligence and folly who has paid his money without getting his deed. When he requests a court to interfere for him, and save him from the consequences

of his own disregard of the law, he should be held rigidly to full, satisfactory, and indubitable proof—

"First. Of the contract, and of its terms. Such proof must be clear, definite, and conclusive, and must show a contract, leaving no *jus deliberandi,* or *locus poenitentioe.* It cannot be made out by mere hearsay, or evidence of the declarations of a party to mere strangers to the transaction, in chance conversation, which the witness had no reason to recollect from interest in the subject-matter, which may have been imperfectly heard, or inaccurately remembered, perverted, or altogether fabricated; testimony, therefore, impossible to be contradicted.

"Second. That the consideration has been paid or tendered. But the mere payment of the price, in part or in whole, will not, of itself, be sufficient for the interference of a court of equity, the party having a sufficient remedy at law to recover back the money.

"Third. Such a part performance of the contract that its rescission would be a fraud on the other party, and could not be fully compensated by recovery of damages in a court of law.

"Fourth. That delivery of possession has been made in pursuance of the contract, and acquiesced in by the other party. This will not be satisfied by proof of a scrambling and litigious possession." [23]

Many judges have referred to and quoted Lord Redesdale's comments in Lindsay v. Lynch.[24] They express my concern about the present case. He said:

"I am not disposed to carry the cases which have been determined on the statute of frauds any further than I am compelled by former decisions: that statute was made for the purpose of preventing perjuries and frauds, and nothing can be more manifest to any person who has been in the habit of practising in courts of equity, than that the relaxation of that statute has been a ground of much perjury and much fraud. If the statute had been rigorously observed, the result would probably have been that few instances of parol agreements would have occurred; agreements would, from the necessity of the case, have been reduced to writing: whereas it is manifest that the decisions on the subject have opened a new door to fraud, and that under pretence of part execution, if possession is had in any way whatever, means are frequently found to put a court of equity in such a situation, that without departing from its rules it feels itself obliged to break through the statute: and I remember it was mentioned in one case in argument as a common expression at the bar, that it had become a practice 'to improve gentlemen out of their estates.' It is therefore absolutely necessary for courts of equity to make a stand and not carry the decisions further; and this is a strong case for adherence to that principle."

23. Purcell v. Coleman, supra, 4 Wall. at pages 517–518, 71 U.S. at pages 517–518.

24. 2 Sch. & Lef. * 1, 5 (Ir. Ch. 1804).